[No. B177908. Second Dist., Div. Seven. Jan. 9, 2006.]

CITY OF LOS ANGELES, Plaintiff and Respondent, v.
ANIMAL DEFENSE LEAGUE et al., Defendants and Appellants.

COUNSEL

Law Offices of John J. Uribe and John J. Uribe for Defendants and Appellants.

Rockard J. Delgadillo, City Attorney, Zna Houston, Assistant City Attorney, and Vivienne Swanigan, Deputy City Attorney, for Plaintiff and Respondent.

OPINION

**PERLUSS, P. J.**—The City of Los Angeles on behalf of two of its employees, Sharon Morris, then interim general manager of the City's animal services department, and David Diliberto, director of field operations for the

department, filed three petitions under Code of Civil Procedure section 527.8[1] seeking workplace violence protective orders against animal rights activist Pamelyn Ferdin Vlasak (Ferdin)[2] and the Animal Defense League—Los Angeles (ADL-LA) following a raucous nighttime protest at Diliberto's home. The trial court granted temporary restraining orders against Ferdin and ADL-LA in the two actions initiated on behalf of Diliberto, denied without prejudice a temporary restraining order in the action on behalf of Morris against ADL-LA and set all three matters for a hearing with respect to the City's request for permanent injunctive relief. In response Ferdin and ADL-LA filed special motions to strike the actions under section 425.16, the anti-SLAPP statute.[3]

The trial court denied the special motions to strike, holding the City's workplace violence petitions fall within section 425.16, subdivision (d)'s exception for an "enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor" and thus are exempt from scrutiny under section 425.16. Ferdin and ADL-LA appeal from the trial court's orders, contending the petitions are not enforcement actions within the meaning of section 425.16, subdivision (d), and therefore are subject to a special motion to strike; the City's petitions for injunctive relief arise from acts in furtherance of their right of petition or free speech under the United States and California Constitutions in connection with a public issue; and the City has failed to demonstrate a probability it will prevail on its claims under section 527.8. We agree with Ferdin and ADL-LA on all three points and reverse the trial court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Protest at David Diliberto's Home*

Shortly before 10:00 p.m. on June 12, 2004, approximately 10 protestors, including Ferdin and her husband Dr. Jerry Vlasak, also a member of ADL-LA, participated in a noisy demonstration at Diliberto's home protesting what they believed to be the inhumane treatment and killing of animals by the City of Los Angeles at its six animal shelters. Some of the demonstrators reportedly wore masks and others hooded sweatshirts with the hoods pulled tightly around their faces. According to Diliberto, Ferdin was yelling

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Ferdin states her correct name is Pamelyn Ferdin and she was erroneously sued as Pamelyn Ferdin Vlasak. We refer to her as Ferdin throughout this opinion.

[3] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

into a bullhorn from his front porch, knocking on the front door and banging both the door knocker and the lid on the mail slot on the front door. A flyer from ADL-LA criticizing the City's animal services department and its personnel was put through Diliberto's mail slot. When Diliberto demanded the protestors leave, the screaming and banging grew louder. The police were called, but the demonstration ended and the protestors left before the police arrived at the scene.

A news release apparently from ADL-LA and posted on its Web site described the protest on June 12, 2004 as the first in a series of "mobile demo's" and reported the demonstrators had gone to the homes of Morris and then-mayor James Hahn prior to their arrival at Diliberto's home.

### 2. The City's Workplace Violence Petitions

On June 17, 2004 the City filed three substantially identical petitions pursuant to section 527.8 seeking workplace violence protective orders on behalf of Diliberto against Ferdin and ADL-LA and on behalf of Morris only against ADL-LA. In addition to the petitions themselves, filed on the mandatory form adopted by the Judicial Council of California,[4] the City filed declarations from Morris and Diliberto with attached exhibits in support of its requests for temporary restraining orders against Ferdin (in a petition filed on behalf of Diliberto) and against ADL-LA (in separate petitions filed on behalf of Diliberto and Morris).

The petitions alleged in identical language Ferdin and ADL-LA had made a credible threat of violence against Morris and Diliberto that can reasonably be construed to be carried out or to have been carried out at the employees' workplace at 419 South Spring Street, Los Angeles. The petitions described the protest at Diliberto's home, which it asserted violated applicable trespass laws and caused fear to Diliberto and his family. The petitions further alleged, "Defendant plans to continue to attack employee's home, leading persons wearing masks and hooded clothin[g] to employee's home on a continuous basis."

The petitions and the attached declarations and exhibits also asserted the ADL-LA, described as a "militant animal rights activist group" headed by Ferdin, has a Web site on which "high powered bullets are aimed at

---

[4] Section 527.8, subdivision (m), provides, "The Judicial Council shall develop forms, instructions, and rules for scheduling of hearings and other procedures established pursuant to this section. The forms for the petition and response shall be simple and concise, and their use by parties in actions brought pursuant to this section shall be mandatory." The City used Judicial Council Form WV-100, as revised July 1, 2001. The current version of Form WV-100 was revised by the Judicial Council effective January 1, 2005.

'Target-Administration,' which leads to employee's name and home address and a page with employee's name with bullet holes depicted." Diliberto's declaration states the Web site has his picture, home information and a page of allegations regarding his job performance. Print-outs purporting to be from the Web site are attached to the declaration. Diliberto also declared, "I am afraid for my life and safety and I am especially afraid for the lives and safety of my wife and four children, who were badly frightened by the events of June 12, 2004." Morris's declaration also describes the ADL-LA Web site and newsletter-flyers and concludes by stating, based on ADL-LA's activities "and the fact that they have targeted me and my home, described themselves as militant, and posted my home address and telephone numbers on their web site with violent images, I am afraid for my safety and the safety of my family."

Upon reviewing the petitions and supporting declarations and exhibits, the trial court issued orders to show cause for August 20, 2004 with respect to all three petitions and temporary restraining orders against ADL-LA and Ferdin with respect to the two petitions filed by Diliberto.[5] In addition to issuing in modified form many of the standard restraining orders preprinted on Judicial Council Form WV-120, the court specifically directed ADL-LA and Ferdin to remove Diliberto's home address and telephone number from their Web sites and ordered them not to post his home address or telephone number on the Internet.

### 3. *Ferdin and ADL-LA's Special Motions to Strike and the City's Opposition*

In response to the City's petitions Ferdin and ADL-LA filed special motions to strike the actions under section 425.16, the anti-SLAPP statute, which they set for hearing on August 20, 2004, the same date as the hearing on the orders to show cause. (Ferdin and ADL-LA apparently also filed demurrers to the petitions.) In a supporting declaration Ferdin identified herself as an officer and cofounder of ADL-LA, which she described as "an above-ground 'grass roots' organization which, through its leadership, members, as well as the public, via the Internet, protests, picketing, speeches, interviews, leaflets, and the like, advocate for the humane treatment of animals . . . which it deems is a public issue and matter of public interest."

In her declaration Ferdin asserted the June 12, 2004 protest at Diliberto's house lasted less than 10 minutes, occurred only on public property or property open to the public, was peaceful and "did not result in any

---

[5] The City's request for a temporary restraining order against ADL-LA on behalf of Morris was denied without prejudice.

violence, arrests, or otherwise require law enforcement to maintain the peace." Ferdin testified she and Vlasak were the only two ADL-LA members present during the demonstration. With respect to the ADL-LA Web site (animaldefenseleague.com), Ferdin stated ADL-LA hosted the site as a public forum and insisted it contained opinions and statements from anyone who desired to express his or her views about the humane treatment of animals.

The City filed oppositions to Ferdin and ADL-LA's special motions to strike, arguing section 425.16 does not apply to section 527.8 petitions for workplace violence restraining orders on the grounds that violence or the advocacy of violence is not a protected First Amendment activity. The City also argued that, even if the petitions do arise from acts in furtherance of Ferdin's and ADL-LA's right of petition or free speech in connection with a public issue, the special motions to strike were properly denied because the declarations filed in support of the City's request for temporary restraining orders demonstrated a probability it will prevail on its claims under section 527.8.

On August 19, 2004 the trial court permitted Ferdin and ADL-LA to file a supplemental brief addressing whether section 425.16, subdivision (d), excepted the City's workplace violence petitions as governmental enforcement actions under *City of Long Beach v. California Citizens for Neighborhood Empowerment* (2003) 111 Cal.App.4th 302 [3 Cal.Rptr.3d 473] (*Citizens for Neighborhood Empowerment*), and *People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442 [104 Cal.Rptr.2d 618] (*Health Laboratories*).

### 4. *The Trial Court's Ruling*

On August 20, 2004 the trial court denied the special motions to strike, holding that under section 425.16, subdivision (d), as interpreted by *Citizens for Neighborhood Empowerment, supra*, 111 Cal.App.4th 302, and *Health Laboratories, supra*, 87 Cal.App.4th 442, the City's workplace violence petitions were exempted from the provisions of the anti-SLAPP statute. The court also indicated that, if it had reached the issues, it would have held Ferdin and ADL-LA's activities were in furtherance of their right to petition and free speech in connection with a public issue within the meaning of section 425.16 but their motions would nonetheless have been denied because the City had demonstrated a probability of prevailing on the merits.

Ferdin and ADL-LA immediately filed notices of appeal, staying further proceedings in the trial court. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180 [25 Cal.Rptr.3d 298, 106 P.3d 958].)[6] We consolidated the three appeals on March 1, 2005.

## CONTENTIONS

Ferdin and ADL-LA contend the City's workplace violence petitions are not civil enforcement actions within the meaning of section 425.16, subdivision (d), and are therefore subject to a special motion to strike; the City's petitions arise from acts by Ferdin and ADL-LA in furtherance of their right of petition or free speech under the United States and California Constitutions in connection with a public issue; and the City has failed to demonstrate a probability it will prevail on its claims under section 527.8 as to ADL-LA because injunctive relief under that section is available only against natural persons, not corporate entities, and as to both Ferdin and ADL-LA because the City failed to introduce evidence of any unlawful violence or credible threat of violence against either Diliberto or Morris that can reasonably be construed to be carried out or to have been carried out at the workplace.

## DISCUSSSION

1. *Section 527.8 Workplace Violence Petitions*

Section 527.6 authorizes a "person" who has been harassed to obtain an injunction under specified circumstances prohibiting any further harassment.[7] In *Diamond View Limited v. Herz* (1986) 180 Cal.App.3d 612 [225 Cal.Rptr. 651] the Court of Appeal held the term "person" as used in section 527.6 to specify who may petition for injunctive relief against civil harassment was limited to a "natural person" and did not include a business entity, even if that entity was the employer of the victim of the harassment.

In response to the ruling in *Diamond View Limited v. Herz, supra,* 180 Cal.App.3d 612, section 527.8, with provisions for temporary restraining

---

[6] Prior to the filing of the notice of appeal and automatic stay of further trial court proceedings, the trial court ordered the previously granted temporary restraining orders to continue in effect during the pendency of the appeal. (See *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 649, fn. 10 [24 Cal.Rptr.3d 619] [automatic stay pending appeal of denial of special motion to strike under section 425.16 does not affect trial court's prohibitory civil harassment temporary restraining order].)

[7] Section 527.6, subdivision (a), provides, "A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an injunction prohibiting harassment as provided in this section." Section 527.6, subdivision (b), defines "harassment" as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. . . ."

orders and injunctive relief substantially similar to those in section 527.6, was enacted in 1994 authorizing an employer, specifically including a corporate or government employer,[8] to seek restraining orders on behalf of its employees to prevent threats or acts of violence in the workplace by another employee or a third person. (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 333–334 [85 Cal.Rptr.2d 86] (*Scripps Health*) ["Section 527.8 was thus intended to enable employers to seek the same remedy for its employees as section 527.6 provides for natural persons."]; see Sen. Com. on Judiciary, Analysis of Assem. Bill No. 68 (1993–1994 1st Ex. Sess.) as amended June 30, 1994 ["This bill enacts parallel provisions to Section 527.6, to allow an employer to pursue a TRO and an injunction. The bill limits the acts that may be sought to be enjoined by an employer to unlawful violence or a credible threat of violence. (An individual could still pursue an injunction for harassment under Section 527.6)."].)

■  To obtain injunctive relief under section 527.8 an employer must prove its employee has suffered unlawful violence or a credible threat of violence from an individual that can reasonably be construed to have occurred in the workplace. (§ 527.8, subds. (a), (e).) In addition, the employer must demonstrate by clear and convincing evidence that it is reasonably likely such unlawful violence may occur in the future absent a restraining order. (§ 527.8, subd. (f); *Scripps Health, supra,* 72 Cal.App.4th at p. 335 ["[T]o obtain a permanent injunction under section 527.8, subdivision (f), a plaintiff must establish by clear and convincing evidence not only that a defendant engaged in unlawful violence or made credible threats of violence, but also that great or irreparable harm would result to an employee if a prohibitory injunction were not issued due to the reasonable probability unlawful violence will occur in the future."]; *id.* at p. 335, fn. 9 ["[T]he requirement of establishing the reasonable probability wrongful acts, or simply unlawful violence, will occur in the future guarantees that injunctive relief will be issued to prevent future harm instead of punishing past completed acts."].)

### 2. *Section 425.16: The Anti-SLAPP Statute*

■  Section 425.16 provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)[9] In ruling

---

[8] Section 527.8, subdivision (d), defines "employer" to include "a federal agency, the state, a state agency, a city, county, or district, and a private, public, or quasi-public corporation, or any public agency thereof or therein."

[9] Under the statute an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:

on a defendant's motion under section 425.16, the trial court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).)[10] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon Enterprises*).)[11] " 'The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue. [Citation.]' [Citation.]" (*Kajima Engineering & Construction, Inc. v. City of Los Angeles, supra,* 95 Cal.App.4th at p. 928 (*Kajima*).)

---

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

10 " 'In terms of the so-called threshold issue, the moving defendant's burden is to show the challenged cause of action "arises" from protected activity. [Citations.]' " (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928 [116 Cal.Rptr.2d 187].) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e) . . . .' [Citations.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].)

11 Once the defendant establishes the anti-SLAPP statute applies, the burden shifts to the plaintiff to demonstrate a "probability" of prevailing on the claim. (*Equilon Enterprises, supra,* 29 Cal.4th at p. 67.) "[T]he plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].)

■ We review de novo the trial court's rulings on an anti-SLAPP motion (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645 [24 Cal.Rptr.3d 619]; *Kajima, supra*, 95 Cal.App.4th at p. 929), including the question whether section 425.16 applies to the challenged claim. (*Thomas*, at p. 645; *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303].)

### 3. *Section 527.8 Workplace Violence Petitions Are Subject to Special Motions to Strike under Section 425.16*

■ A petition for injunctive relief against civil harassment pursuant to section 527.6 is subject to a special motion to strike under the anti-SLAPP statute. (*Thomas v. Quintero, supra*, 126 Cal.App.4th at p. 652 ["petitions brought pursuant to section 527.6 are subject to attack by a special motion to strike under section 425.16"].) "[F]acially the anti-SLAPP statute applies to 'petitions' and no exception is made for one filed under the civil harassment statute . . . ." (*Id.* at p. 646.) "We are fully cognizant that the civil harassment statute establishes a special procedure specifically designed to provide for expedited injunctive relief to persons who have suffered civil harassment. . . . [¶] Because of the significant social and community value the civil harassment statute provides, like the trial court, we are wary of the potential for conflict between the anti-SLAPP statute and the civil harassment remedy. However, we cannot ignore the relatively straightforward textual solution to the issue of section 527.6's interpretation raised on appeal. Fortunately, we also do not share the concerns expressed that allowing a petition for civil harassment to be attacked by a special motion to strike will interfere with the civil harassment statutory scheme, nor do we view it as being likely to inhibit the invocation of that procedure." (*Id.* at pp. 648–649.)

■ Given the substantial similarity (other than the identity of the petitioning party) between petitions for civil harassment restraining orders under section 527.6 and petitions for workplace violence restraining orders under section 527.8, the reasoning of *Thomas v. Quintero, supra*, 126 Cal.App.4th 635, applies equally to both statutes. Thus workplace violence petitions in general, like civil harassment petitions, are subject to motions to strike under section 425.16. (126 Cal.App.4th at p. 651.)

Without disputing the general applicability of section 425.16 to workplace violence petitions, however, and relying in particular on this court's decision in *California Citizens for Neighborhood Empowerment, supra*, 111 Cal.App.4th 302, the City asserts the petitions it filed on behalf of its employees fall within section 425.16, subdivision (d)'s exception for an "enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor" and thus are exempt from scrutiny under section

425.16. The City argues the petitions constitute civil enforcement actions because the conduct of Ferdin and ADL-LA it sought to enjoin violates both section 527.8 and Penal Code section 71, which makes it a crime to threaten a public officer with the intent to cause that individual to do or refrain from doing any act in the performance of his or her duties. The City's position, adopted by the trial court in its order denying the special motions to strike, directly conflicts with the express language of section 425.16, subdivision (d), and represents an unwarranted extension of the holding and rationale of our opinion in *California Citizens for Neighborhood Empowerment.*

■ The City is correct section 425.16, subdivision (d), applies not only to criminal prosecutions but also broadly to civil enforcement actions filed by one of the designated "public prosecutors" seeking injunctions, restitution or civil penalties (but not damages). (*Health Laboratories, supra,* 87 Cal.App.4th at pp. 450–451; *California Citizens for Neighborhood Empowerment, supra,* 111 Cal.App.4th at p. 307.) In addition, although the express language of the statute limits the exemption to enforcement actions "brought in the name of the People of the State of California," an otherwise exempted enforcement action brought in the name of a city or county itself, rather than "the People" is not necessarily outside the ambit of the section 425.16, subdivision (d), exception to scrutiny under the anti-SLAPP law. (*California Citizens for Neighborhood Empowerment,* at pp. 307–308.) "[A]n examination of the legislative history of section 425.16 shows there was concern on the part of the state Attorney General that the statute as initially introduced (without the exemption) might impair the ability of state and local agencies to enforce certain consumer protection laws. . . . [I]t is reasonable to infer that the measure was designed to address the Attorney General's concern, which extended to all civil actions brought by state and local agencies to enforce laws aimed at consumer and/or public protection." (*Ibid.*) Accordingly, notwithstanding the literal language of section 425.16, subdivision (d), that provision applies "to any civil enforcement action initiated by a city attorney, county counsel, district attorney or attorney general to enforce laws intended to protect the public." (*California Citizens for Neighborhood Empowerment,* at p. 307.)

■ Although section 425.16, subdivision (d), thus applies somewhat more broadly than the literal language of the provision may suggest, only actions brought by a governmental agency to enforce laws aimed generally at public protection qualify for this exemption to anti-SLAPP scrutiny. (*Health Laboratories, supra,* 87 Cal.App.4th at pp. 450–451 [rejecting equal protection challenge to exemption in § 425.16, subd. (d), on ground subjecting public prosecutors' enforcement actions to anti-SLAPP statute "could unduly hinder and undermine their efforts to protect the health and safety of the citizenry at large"]; see *California Citizens for Neighborhood Empowerment,*

*supra*, 111 Cal.App.4th at pp. 307–308.) The City's workplace violence petitions simply do not satisfy this definition of civil enforcement actions.[12]

First, unlike the City of Long Beach's campaign financing laws at issue in *California Citizens for Neighborhood Empowerment, supra*, 111 Cal.App.4th at pages 304–305, and the statutes prohibiting false or misleading advertising and unfair competition involved in *Health Laboratories, supra*, 87 Cal.App.4th at pages 445, 450, section 527.8 authorizing workplace violence petitions, important as it is, plainly is not a law intended "to protect the health and safety of the citizenry at large." (*Health Laboratories*, at pp. 450–451.) It is a tool for permitting employers—private or public—to ensure a safe workplace and to protect their individual employees (*Scripps Health, supra*, 72 Cal.App.4th at pp. 333–334 [§ 527.8 enables employer to seek same remedy for its employees as § 527.6 provides for natural persons: "injunctive relief so as to *prevent* such acts of workplace violence"]; see *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1258 [29 Cal.Rptr.3d 521] (*Huntingdon Life*) [§ 527.8 allows employer to seek anti-harassment injunctive relief on behalf of its employees].) Thus, whether or not the City actually believed it was acting in some sort of a "hybrid" capacity as both employer and public prosecutor when it filed the workplace violence petitions, as it now insists, the nature of the actions initiated does not fall within the narrow ambit of the section 425.16, subdivision (d), exemption.

Second, the City's and our dissenting colleague's characterization of the City's motive for filing the petitions notwithstanding, the record does not support the assertion these three workplace violence petitions were filed by the City, wholly or in part, in its capacity as "public prosecutor." Rather, the petitions were filed, as they must be under section 527.8, by the City as Morris's and Diliberto's "employer," a term expressly defined by section 527.8, subdivision (d), to include cities, counties and other governmental entities as well as private enterprises that have one or more individuals in their service. Indeed, although the City now claims its workplace violence petitions were intended to enforce Penal Code section 71's prohibition against threats to public officers, the petitions themselves contain no allegation of a

---

[12] The City's insistence its motive in filing the workplace violence petitions was not to chill Ferdin's or ADL-LA's exercise of their First Amendment rights is irrelevant both to our determination whether section 425.16 applies to these actions and to our evaluation whether the special motions to strike should have been granted. (*Equilon Enterprises, supra*, 29 Cal.4th at pp. 58–67 [§ 425.16 imposes no separate or additional requirement on defendant of proving complaint was filed with intent to chill his or her exercise of constitutional speech or petition rights].)

violation of that statute, alleging only that Ferdin's protest at Diliberto's home on the night of June 12, 2004 was "in violation of trespass laws."[13]

█ Finally, although this court departed from the express language of section 425.16, subdivision (d), in *California Citizens for Neighborhood Empowerment, supra,* 111 Cal.App.4th at pages 307–308, when we applied the exemption to a civil enforcement action that had not been brought literally "in the name of the people of the State of California," any further erosion of the specific requirements of that provision is unwarranted in light of the Supreme Court's subsequent admonition in *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 [3 Cal.Rptr.3d 636, 74 P.3d 737], that the plain language of section 425.16 is to be respected and that exceptions to the statute's broad reach must not be lightly implied: "The Legislature clearly knows how to create an exemption from the anti-SLAPP statute when it wishes to do so." (*Jarrow Formulas, Inc. v. LaMarche,* at p. 735.)

### 4. *Ferdin and ADL-LA's Challenged Conduct Was in Furtherance of Their Right to Petition and Free Speech in Connection with a Public Issue*

The threshold issue in ruling on an anti-SLAPP motion is whether "the challenged cause of action is one arising from protected activity." (*Equilon Enterprises, supra,* 29 Cal.4th at p. 67.) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 [124 Cal.Rptr.2d 530, 52 P.3d 703].) Demonstrations, leafleting and publication of articles on the Internet to criticize government policy regarding the alleged mistreatment of animals at City-run animal shelters—the activities in which Ferdin and ADL-LA engaged—constitute a classic exercise of the constitutional rights of petition and free speech in connection with a public issue or an issue of public interest within the meaning of section 425.16, subdivision (e)(4). (*Huntingdon Life, supra,* 129 Cal.App.4th at pp. 1245–1246 [lawsuit arising from demonstrations and Internet postings against private laboratory's animal testing based on exercise of First Amendment rights]; *Thomas v. Quintero, supra,* 126 Cal.App.4th at p. 658 [tenants' picketing and leafleting at landlord's church to protest property management practices protected activities within § 425.16,

---

[13] In contrast to the omission of any reference to Penal Code section 71 in the workplace violence petitions, according to a press release from the Los Angeles City Attorney, on December 16, 2005, the City filed a 14-count misdemeanor complaint against ADL-LA, specifically alleging that the organization and others (including Ferdin and Vlasak) had participated in "a conspiracy to violate the state penal code by threatening or attempting to threaten public officers or employees." (<http://www.lacity.org/atty/index/attyindex56034375_12162005.pdf> [as of Jan. 9, 2006].)

subd. (e)(3)]; see also *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1144 [12 Cal.Rptr.3d 493] [no dispute demonstrations and picketing in front of retail stores and issuance of press releases and Internet articles describing plight of low-income immigrant workers arose from defendants' exercise of First Amendment right of free speech in connection with a public issue].)

The City argues Ferdin and ADL-LA have failed to satisfy the first prong of section 425.16 because the workplace violence petitions challenge only their threats and other illegal activities (citing once again to Penal Code section 71), not their legitimate protests, and therefore are based entirely on unprotected activity.[14] As this court has previously held, however, "The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish [his or] her actions are constitutionally protected under the First Amendment as a matter of law." (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305 [106 Cal.Rptr.2d 906].) "Instead, under the statutory scheme, a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary. [Citation.] Otherwise, the second step would become superfluous in almost every case, resulting in an improper shifting of the burdens." (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1089–1090 [114 Cal.Rptr.2d 825]; see *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 458 [125 Cal.Rptr.2d 534].) To be sure, if the defendant concedes the conduct complained of was illegal, the defendant will be unable to make a prima facie showing the action arises from protected activity within the meaning of section 425.16. (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1367 [102 Cal.Rptr.2d 864], disapproved on another ground in *Equilon Enterprises, supra,* 29 Cal.4th at p. 68, fn. 5.)[15] Far from conceding they

---

[14] "Violence and threats of violence . . . fall outside the protection of the First Amendment because they coerce by unlawful *conduct,* rather than persuade by expression, and thus play no part in the 'marketplace of ideas.' As such, they are punishable because of the state's interest in protecting individuals from fear of violence, the disruption fear engenders and the possibility the threatened violence will occur." (*In re M.S.* (1995) 10 Cal.4th 698, 714 [42 Cal.Rptr.2d 355, 896 P.2d 1365].)

[15] In *Paul for Council v. Hanyecz, supra,* 85 Cal.App.4th 1356, the defendants had admitted the campaign finance activities at issue were illegal. As a result, the court found the illegal activity—money laundering—was not within the scope of the anti-SLAPP statute's protections because it was not a "valid" exercise of one's constitutional rights. (*Id.* at pp. 1366–1367.) "This case, as we have emphasized, involves a factual context in which defendants have effectively conceded the illegal nature of their election campaign finance activities for which they claim constitutional protection. Thus, there was no dispute on the point and we have concluded, as a matter of law, that such activities are *not* a valid exercise of constitutional rights as contemplated by section 425.16. However, had there been a factual dispute as to the legality of defendants' actions, then we could not so easily have disposed of defendant's

engaged in illegal activity, of course, Ferdin and ADL-LA vigorously insist their protests against the City's inhumane treatment of animals were well within the law. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 910–911 [120 Cal.Rptr.2d 576] [distinguishing *Paul for Council* when legality of defendant's litigation activities was "a matter of considerable dispute"]; see also *1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 584 [132 Cal.Rptr.2d 789] [finding *Paul for Council* inapplicable when case was "distinctly not one 'in which defendants ha[d] effectively conceded the illegal nature of their . . . activities . . . .' "].)

### 5. *The City Failed to Establish a Probability It Would Prevail on Its Petitions*

"[I]n order to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the plaintiff need only have ' "stated and substantiated a legally sufficient claim." ' [Citation.]" (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 88; see *Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th at p. 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].) Although the showing required is only one of "minimal merit" (*Navellier,* at pp. 89, 93), the two workplace violence petitions directed to ADL-LA fail as a matter of law because section 527.8 authorizes issuance of a workplace violence restraining order only against "individuals," not against groups, associations or corporate entities. The City's petition on behalf of Diliberto against Ferdin also fails because the City presented no evidence she conveyed a credible threat of violence that can reasonably be construed to be carried out at the workplace.

### a. *Restraining orders under section 527.8 may be directed only to natural persons*

Section 527.8, subdivision (a), is specifically directed to unlawful violence and credible threats of violence made by an "individual": "Any employer, whose employee has suffered unlawful violence or a credible threat of violence from *any individual* . . . may seek a temporary restraining order and an injunction on behalf of the employee prohibiting further unlawful violence or threats of violence by that *individual*." (Italics added.) We look to the " 'usual and ordinary meaning' of the statutory language in order to discern legislative intent." (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 571 [21 Cal.Rptr.3d 331, 101 P.3d 140]; see *Murillo v.*

---

motion. [¶] . . . If the plaintiff . . . cannot demonstrate as a matter of law that the defendant's acts do not fall under section 425.16's protection, then the claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's burden to provide a prima facie showing of the merits of the plaintiff's case." (*Paul for Council,* at p. 1367; see also *Navellier v. Sletten, supra,* 29 Cal.4th 82, 94 [operative sections of § 425.16 contain no separate "proof-of-validity requirement"].)

*Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990 [73 Cal.Rptr.2d 682, 953 P.2d 858] [in resolving questions of statutory interpretation, the court "must attempt to effectuate the probable intent of the Legislature, as expressed through the actual words of the statutes in question"; the first step " ' "is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. [Citations.]" ' "].) In ordinary usage the word "individual" denotes a natural person not a group, association or other artificial entity. (See Webster's 3d New Internat. Dict. (2002 ed.) p. 1152 [giving a primary definition of "individual" as "a single human being as contrasted with a social group or institution"].) This commonsense interpretation of the word "individual" in section 527.8, subdivision (a), is reinforced by section 527.8, subdivision (g), which specifies either party may be represented by counsel or may "appear[] on his or her own behalf," a provision that could not apply to a corporate entity such as ADL-LA. (See *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1284, fn. 5 [111 Cal.Rptr.2d 439] ["a corporation may not represent itself, except in a small claims proceeding"]; *Merco Constr. Engineers, Inc. v. Municipal Court* (1978) 21 Cal.3d 724, 730–731 [147 Cal.Rptr. 631, 581 P.2d 636] [same].)

The legislative history of section 527.8 also supports interpretation of an "individual" subject to a workplace violence restraining order as a natural person only. As discussed, section 527.8 was enacted in large part in reaction to the holding in *Diamond View Limited v. Herz, supra,* 180 Cal.App.3d 612, which restricted the availability of civil harassment injunctions to natural persons, notwithstanding the use of the broader term "person" in section 527.6. (*Scripps Health, supra,* 72 Cal.App.4th at pp. 333–334.) To overcome that limitation, in drafting section 527.8 the Legislature included a comprehensive definition of the term "employer" to ensure all types of private and public entities could seek workplace violence restraining orders on behalf of their employees. (§ 527.8, subd. (d).) The same provision also assigns an expansive definition to the term "employee," including for example volunteers and independent contractors who perform services for the employer at the employer's worksite. (§ 527.8, subd. (d).) As originally introduced, Assembly Bill No. 68 (1993–1994 1st Ex. Sess.) also broadly authorized issuance of a workplace violence restraining order against either individuals or groups: "Any employer, whose employee suffers harassment, *from an individual or from a group*, in conjunction with or stemming from his or her employment, may seek a temporary restraining order and injunction prohibiting further harassment *by that individual or group*." (Italics added.) The references to harassment or intimidation by a "group" and to restraining orders directed to a group, however, were deleted by amendments soon after introduction of the measure. Given section 527.8's genesis as a reaction to a limited reading of the somewhat ambiguous term "person" in section 527.6, the Legislature's use of broad definitions in section 527.8 for "employer" and "employee," together with its conscious decision to authorize issuance of

workplace violence restraining orders only against "individuals," not "individuals or groups," provides strong evidence a section 527.8 injunction may not be issued against a corporate entity such as ADL-LA. (See generally *Dix v. Superior Court* (1991) 53 Cal.3d 442, 461–462 [279 Cal.Rptr. 834, 807 P.2d 1063] [because Legislature is presumed aware of prior judicial constructions of a statute, alteration of statutory language significant to such a construction is compelling evidence the Legislature intended to change the meaning of a law].)

Finally, although not dispositive in interpreting the authorized scope of a workplace violence restraining order, we believe it is significant that mandatory Judicial Council Form WV-100, in both the iteration used in these actions by the City and as revised effective January 1, 2005, requires the petitioner to include a description of the defendant to be restrained, including sex, height, weight, hair color, eye color, race, age and date of birth— descriptive features that obviously relate only to natural persons, not groups, corporations or other artificial entities.[16]

We recognize the court in *Huntingdon Life, supra,* 129 Cal.App.4th at pages 1258–1259, affirmed the trial court's denial of a special motion to strike filed by Stop Huntingdon Animal Cruelty USA, Inc., an artificial entity, finding plaintiffs Huntingdon Life Sciences, Inc. (HLS) and its employee Claire Macdonald had established a probability of prevailing in their harassment action by presenting evidence of a "credible threat of violence" within the meaning of section 527.6, subdivision (b)(2), and section 527.8, subdivision (b)(2). But the complaint in that case did not mention section 527.8 at all. (*Huntingdon Life,* at p. 1258.) Rather, after finding Macdonald had established a probability of prevailing in the section 527.6 civil harassment action while HLS had not because section 527.6 applies only to natural persons, the court nonetheless concluded the complaint adequately alleged facts giving rise to a cause of action by HLS under section 527.8, which it described simply as "allow[ing] an employer to seek injunctive relief on behalf of its employees under the same criteria set forth in section 527.6." (*Huntingdon Life,* at pp. 1258–1259.) In reaching that result, the *Huntingdon Life* court did not address the use of the term "individual" in section 527.8 nor expressly consider whether a restraining order under that statute was properly addressed to an entity rather than a natural person. It is axiomatic an appellate court's opinion is not authority for propositions never considered or questions not decided. (*People v. Braxton* (2004) 34 Cal.4th 798, 819 [22

---

[16] Curiously, the City completed this portion of the mandatory form in its petitions on behalf Morris and Diliberto against ADL-LA, the corporate entity, using the same personal identifying information for the defendant to be restrained as it had included in the petition on behalf of Diliberto directed against Ferdin (female; five feet, one inch; 110 pounds; brown hair; blue eyes; Caucasian; age 46; date of birth May 10, 1958).

Cal.Rptr.3d 46, 101 P.3d 994]; *People v. Sapp* (2003) 31 Cal.4th 240, 262 [2 Cal.Rptr.3d 554, 73 P.3d 433].)

Injunctive relief against ADL-LA for the type of unlawful conduct alleged by the City may well be available if sought under different provisions of the law. (See generally *Slauson Partnership v. Ochoa* (2003) 112 Cal.App.4th 1005 [5 Cal.Rptr.3d 668] [affirming trial court's denial of special motion to strike following issuance of preliminary injunction limiting protest activities at private shopping mall].) But section 527.8, like section 527.6, is a special statute that significantly modifies the ordinary procedures and requirements in actions for injunctive relief. The City's potential entitlement to similar relief under different statutes does not establish a probability of prevailing on the workplace violence petitions actually filed. (See *Diamond View Limited v. Herz, supra*, 180 Cal.App.3d at p. 619, fn. 8.)

>   b.   *The City failed to present prima facie evidence of any threat of violence at Diliberto's workplace*

The City does not allege Ferdin (or ADL-LA, for that matter) actually engaged in any act of unlawful violence. Accordingly, to obtain a permanent injunction on behalf of Diliberto against Ferdin under section 527.8, the City must establish by clear and convincing evidence that Ferdin made a credible threat of violence against Diliberto that could reasonably be construed to occur (or to have occurred) in the workplace (§ 527.8, subds. (a), (e)) and that it is reasonably likely unlawful violence may occur in the future in the absence of the requested restraining order. (§ 527.8, subd. (f); *Scripps Health, supra*, 72 Cal.App.4th at p. 335 & fn. 9.) Diliberto's workplace as alleged in the petition is "419 S. Spring Street, Los Angeles, CA 90012."

The June 12, 2004 demonstration led by Ferdin that forms the centerpiece of the City's workplace violence petitions took place at Diliberto's home, not his Spring Street workplace.[17] Although we accept for purposes of the City's opposition to the anti-SLAPP motion Diliberto's testimony that his four children were badly frightened by the events of June 12, 2004 and that he feared for his life and safety, as well as for the lives and safety of his family, nothing in that testimony or the exhibits submitted on his behalf in any way

---

[17] At oral argument there was a suggestion that, because Diliberto sometimes worked at his residence, a credible threat of violence at his home would satisfy the statutory requirement that the threat could reasonably be construed to be carried out "at the workplace." We need not decide whether in an appropriate case section 527.8 would authorize a restraining order based on threats made at a home office. Neither the City's petition nor Diliberto's declaration provides any evidentiary support for the assertion Diliberto worked at home; and, as indicated above, the City's petition limits the description of Diliberto's workplace to his Spring Street work address.

suggests violence will occur at Diliberto's workplace, an essential requirement for an injunction under section 527.8. (*Scripps Health, supra,* 72 Cal.App.4th at pp. 333–334.)[18] To the contrary, the Internet postings described by the City, offensive as they may be in displaying red targets and bullet holes next to Diliberto's name, contain his home address, not his office address, and thus cannot reasonably be construed as threats to be carried out at the workplace. Similarly, Morris's declaration focuses on the militant nature of ADL-LA "and the fact that they have targeted me and my home . . . and posted my home address and telephone numbers on their web site with violent images." Consistent with the perceived threats to Diliberto at home, rather than the workplace, the temporary restraining order issued against Ferdin, in addition to the standard orders preprinted on Judicial Council Form WV-120, were directed to conduct aimed at Diliberto's home: The court ordered Ferdin not to "telephone or send correspondence to employee's home address or residence by any means" and to "remove employee's home address and telephone number from the Internet."

The City does not directly address the absence of any nexus between Ferdin's alleged course of conduct constituting credible threats of violence and Diliberto's workplace, instead arguing its evidence in support of a section 527.8 restraining order is essentially the same as the evidence presented in *Huntingdon Life, supra,* 129 Cal.App.4th 1228, in which the Court of Appeal affirmed the trial court's order denying the defendants' special motion to strike as to HLS and Macdonald's harassment claims. Macdonald's cause of action for civil harassment in *Huntingdon Life,* however, was based on section 527.6, not section 527.8; and accordingly there was no requirement the evidence of credible threats of violence in any way involve the workplace. (*Huntingdon Life,* at p. 1242.) Had Diliberto filed his own petition under section 527.6, the evidence presented may well have justified issuance of a restraining order and been sufficient to defeat a special motion to strike; but that hypothetical petition is not before us.

The City is correct a finding HLS had a probability of prevailing on its harassment claim, which was filed under section 527.6 but which the Court of Appeal evaluated as a cause of action for a workplace violence restraining order under section 527.8 (*Huntingdon Life, supra,* 129 Cal.App.4th at

---

[18] As discussed, the original version of Assembly Bill No. 68 (1993–1994 1st Ex. Sess.), the legislation that added section 527.8, introduced on February 18, 1994, would have permitted an employer to obtain a restraining order if its employee suffered from harassment "in conjunction with or stemming from his or her employment." That language was deleted on March 17, 2004 and subsequently replaced with the language in the current statute requiring proof the threat could reasonably be construed as being carried out at the workplace as a result of discussions between the author of the legislation and labor groups who were concerned about the breadth of the original proposal. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 68 (1993–1994 1st Ex. Sess.) as amended June 30, 1994.)

pp. 1258–1259), should have included an examination of the workplace issue. However, as was the case with the question whether a restraining order can be directed to an artificial entity, the *Huntingdon Life* court did not address that issue (presumably because it was not raised by the parties) and simply concluded the criteria for an employer to obtain injunctive relief under section 527.8 were the same as for an individual to obtain relief under section 527.6. As we have discussed, however, although the two provisions parallel each other in many respects, the circumstances under which an individual may obtain a section 527.6 civil harassment restraining order are, in fact, broader than an employer's right to a workplace violence restraining order under section 527.8. (See, e.g., *Scripps Health, supra,* 72 Cal.App.4th at pp. 333–334 [§ 527.8 limits acts that may be enjoined on petition by employer to unlawful violence or credible threat of violence; individual can pursue injunction for harassment under § 527.6].) A required nexus between the unlawful violence or credible threat of violence and the employee's workplace is one such crucial difference between the two forms of restraining orders. (Compare § 527.8, subds. (a) & (b) with § 527.6, subds. (a) & (b).)

Having failed to present a prima facie case that Ferdin made a credible threat of violence that could reasonably be construed to occur or to have occurred in the workplace, the City similarly failed to demonstrate a probability it would prevail on its section 527.8 petition on behalf of Diliberto directed to Ferdin. Accordingly, her special motion to strike the petition should have been granted.

### 6. *Ferdin and ADL-LA Are Entitled to an Award of Costs and Attorney Fees, Including Costs and Attorney Fees on Appeal*

Section 425.16, subdivision (c), provides, "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. . . ." The award of attorney fees to the party bringing a successful special motion to strike under section 425.16 is "mandatory." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 [104 Cal.Rptr.2d 377, 17 P.3d 735].)[19] Accordingly, on remand the trial court is directed to conduct appropriate proceedings to determine the costs and reasonable attorney fees, including attorney fees incurred in connection with this appeal, to be awarded Ferdin and ADL-LA. (*Rosenaur v. Scherer*

---

[19] The dual purpose of this mandatory attorney fee award is to discourage meritless lawsuits and to provide financial relief to the victim of a SLAPP lawsuit "by imposing the litigation costs on the party seeking to 'chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.]" (*Ketchum v. Moses, supra,* 24 Cal.4th at p. 1131.) "The purpose of section 425.16 is clearly to give relief, including financial relief in the form of attorney's fees and costs, to persons who have been victimized by meritless, retaliatory SLAPP lawsuits because of their 'participation in matters of public significance.' [Citation.]" (*Liu v. Moore* (1999) 69 Cal.App.4th 745, 750 [81 Cal.Rptr.2d 807].)

(2001) 88 Cal.App.4th 260, 287 [105 Cal.Rptr.2d 674] ["The appellate courts have construed section 425.16, subdivision (c) to include an attorney fees award on appeal. [Citations.]"]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830] ["Since section 425.16, subdivision (c) provides for an award of attorney fees and costs to a prevailing defendant on a special motion to strike, and does not preclude recovery of appellate attorney fees by a prevailing defendant-respondent, those fees are recoverable"].)[20]

## DISPOSITION

The orders denying the special motions to strike under section 425.16 are reversed. The cause is remanded to the trial court with directions to enter new orders granting the motions and to conduct further proceedings not inconsistent with this opinion. Ferdin and ADL-LA are to recover their attorney fees and costs on appeal in an amount to be determined by the trial court.

Zelon, J., concurred.

**WOODS, J.,** Dissenting.—I respectfully dissent. It appears to this dissenting justice that the majority opinion is founded on a misplaced premise. The analysis and conclusion set forth in the majority opinion is that the City of Los Angeles was in actuality entitled to proceed only under the workplace violence statute found in section 527.8 of the Code of Civil Procedure in filing its three petitions in the Los Angeles County Superior Court. The City of Los Angeles on the other hand has strenuously argued throughout that it was also proceeding on behalf of the people of Los Angeles County as a public prosecutor and was thereby entitled to the exemption contained in Code of Civil Procedure section 425.16 thus undercutting the probability that the Animal Defense League (League) would prevail on its SLAPP motion (strategic lawsuit against public participation). I interpret the record as presenting a *hybrid* situation in which the City of Los Angeles (City) was acting in a dual capacity, i.e., employer *and* prosecutor on behalf of the people. The majority, on the other hand, rather than recognize the *hybrid* nature of this

---

[20] Although the City has advised us the section 527.6 petition on behalf of Morris against ADL-LA (Super. Ct. L.A. County No. BS090518) was dismissed as moot during the pendency of this appeal because she is no longer interim general manager of the animal services department, ADL-LA is nonetheless entitled to recover its attorney fees and costs incurred in connection with that proceeding, as well as the subsequent appeal. (See *White v. Lieberman* (2002) 103 Cal.App.4th 210, 220–221 [126 Cal.Rptr.2d 608] [order sustaining demurrer to complaint without leave to amend does not moot concurrently filed special motion to strike; prevailing defendant entitled to award of attorney fees]; *Kyle v. Carmon, supra,* 71 Cal.App.4th at pp. 917–919 [party has absolute right to voluntarily dismiss an action before a section 425.16 motion has been heard, but dismissal does not preclude the trial court from addressing whether the prevailing party should be awarded attorney fees].)

case, proceeds to employ an analysis which leads to the conclusion that the City's two roles in this instance are mutually exclusive and in finality the majority eliminates the role of the City as prosecutor. I find this conclusion not well taken in light of the record in this case.

A fair summary of the positions espoused by the League and the City is as follows: Preliminarily, Code of Civil Procedure section 425.16, subdivision (d) provides "This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, *acting as a public prosecutor.*" (Italics added.) Without citation to any persuasive authority, the League maintains that the workplace violence petitions of the City are mere efforts by an employer to protect its employees and have no relevance to that portion of Code of Civil Procedure section 425.16, subdivision (d) wherein a city attorney is acting as a public prosecutor. The City maintains on the other hand that it is acting not only for employees, Sharon Morris and David Diliberto, but in the process is acting on behalf of persons who may become similarly situated through the threats of the League "to continue to attack employee's home, leading persons wearing masks and hooded clothin[g] to employee's home on a continuous basis," as alleged by the City in all three of its workplace violence petitions. It seems to this dissenting justice that the City in essence is saying that the natural fallout from its activities on behalf of its employees is to protect the general citizenry of the City as a prosecutor. The City cites Penal Code section 71 as an example of prosecutorial efforts being expended on behalf of the general public in this instance. Penal Code section 71 states in relevant part: "Every person who, with intent to cause, attempts to cause, or causes, any officer or employee of any public or private education institution or any public officer or employee to do, or refrain from doing, any act in the performance of his duties, by means of a threat, directly communicated to such person, to inflict an unlawful injury upon any person or property, and it reasonably appears to the recipient of the threat that such threat could be carried out, is guilty of a public offense . . . ."

I have not located any California decision which addresses a *hybrid* situation as presented in this instance. The legislative history copiously provided in the majority opinion does not contain any indication that the Legislature anticipated that the exemption contained in Code of Civil Procedure section 425.16, subdivision (d) would not apply in a situation where a public prosecutorial agency is acting on behalf of its employees and at the same time on behalf of persons who may become similarly situated.[1]

---

[1] I wish to extend my appreciation to the majority for its assistance in attempting to reach a proper disposition of this troubling appeal by citing the admonition of our Supreme Court in *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 [3 Cal.Rptr.3d 636, 74 P.3d 737]

I find the majority opinion to be miscast for what this dissenting justice discerns is an attempt to force a square peg into a round hole. If the majority were to find that this is indeed a *hybrid* situation in which the City is acting in a dual capacity, as heretofore maintained in this dissent, I opine that logically the majority should conclude that treating the case exclusively as one of an employer trying to protect its employees against workplace violence *only* is on infirm ground.

If I were in the majority, I would affirm the judgment of the trial court in its entirety and award attorneys' fees and costs on appeal to respondent City of Los Angeles.

A petition for a rehearing was denied January 30, 2006, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 12, 2006, S141292. Werdegar, J., did not participate therein. Baxter, J., was of the opinion that the petition should be granted.

---

that "the Legislature clearly knows how to create an exemption from the anti-SLAPP statute when it wishes to do so." I also appreciate the conclusion drawn by the majority from the language in *Jarrow Formulas, Inc.* that courts are to respect the language of section 425.16 and that exceptions to the statute's broad reach must not be lightly implied. In response, this dissenting justice has not intended to take the admonition of our high court lightly, but the facts of *Jarrow Formulas, Inc.* are so far removed from the case at hand as to constitute dictum in its application in this instance, albeit dictum from our high court is entitled to great weight and I certainly treat it in such a manner. I'm still left with the opinion that neither the Legislature nor any case law has addressed the hybrid situation in this instance. Accordingly, I again express my appreciation to the majority, but reiterate my dissent.