[Civ. No. 25800. Third Dist. Apr. 30, 1986.]

DIAMOND VIEW LIMITED et al., Plaintiffs and Respondents, v. PAUL HERZ, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Harold L. Abbott and Paul Herz, in pro. per., for Defendant and Appellant.

Kellison & Cady and Frank D. Cady for Plaintiffs and Respondents.

**OPINION**

**SPARKS, J.**—Code of Civil Procedure section 527.6 authorizes a "person" who has been harassed to obtain an injunction prohibiting any further ha-

rassment. The principal question in this case is whether a business entity is a person within the meaning of the statute. We hold that it is not.

Defendant Paul Herz appeals from the granting of an injunction pursuant to Code of Civil Procedure section 527.6 restraining him from alarming, annoying or harassing Diamond View Ltd. (Diamond View), a limited partnership, and its manager, Kit Doering (Doering), and requiring him to remain outside the premises of two taverns owned by Diamond View. Defendant contends that a limited partnership is not a person in whose favor an injunction can be granted under the statute. He further contends that the pleadings did not allege a knowing and willful course of conduct aimed at a specific person and for that reason the injunction was also improperly issued in favor of Ms. Doering. Finally, he asserts that there are procedural irregularities in the cost bill filed in this case.

In the published portion of this opinion we consider and resolve the first contention. In the unpublished portion we consider the two remaining contentions. We first hold there that the injunction was properly issued in favor of Ms. Doering because the record reflects that the petition was amended on the day of the hearing to allege a cause of action for personal harassment against her. Finally, we remand the case for further proceedings on the award of attorney's fees.

### Procedural and Factual Background

On January 2, 1985, Diamond View "dba Hotel Mt. Lassen, Black Rock Tavern & The Western Room" filed a petition against defendant for an injunction prohibiting harassment pursuant to Code of Civil Procedure section 527.6. ██ ██ ██ Various individuals, including Kit Doering, joined in the petition as plaintiffs.[1] The acts of harassment specified in the original petition were these: "Defendant, when patronizing Plaintiff's es-

---

[1]The petition is on the form approved by the Judicial Council. (See Code Civ. Proc., § 527.6, subd. (k).) The form uses the term "plaintiff" in the singular and, except for the listing of the names of the various plaintiffs, the petition here does also. The individuals named as plaintiffs are Kit Doering, Bill Gray, Lucille Lisman, Charlie Holweg, Dave Gower and Bill Kerns. Doering, Gray, Lisman, Holweg and Gower are all employees of Diamond View. The legal status of Diamond View is not set out in the petition. Counsel for plaintiffs asserted in his brief that Diamond View is a limited partnership which owns the Hotel Mt. Lassen and that both bars are located in that hotel. He further asserted that Bill and Madeline Kerns are the sole shareholders of Sierra Alta Terra Incorporated, which in turn is the general partner of Diamond View. Counsel for defendant stipulated at oral argument that these facts are true.

A limited partnership is "a partnership formed by two or more persons under the laws of this state and having one or more general partners and one or more limited partners." (Corp. Code, § 15611, subd. (j).) It may bring an action in its own name. (Code Civ. Proc., § 388, subd. (a); *H & M Associates* v. *City of El Centro* (1980) 109 Cal.App.3d 399, 409 [167 Cal.Rptr. 392].)

tablishment, becomes drunk or otherwise beligerent [*sic*] and harasses, annoys, and starts fights with Plaintiff's patrons."

Declarations of six employees of Diamond View were filed in support of the request for a temporary restraining order. In general they allege that defendant becomes drunk in the bars in the hotel and then annoys or picks fights with other patrons. They also contain the following specific allegations concerning defendant's belligerent behavior in Diamond View's establishments: On October 27, 1984, defendant threw a punch at another patron in the Western Room without provocation. On November 2, 1984, he was observed throwing an unprovoked punch at another patron in the Western Room. On December 18, 1984, he provoked a fight with another patron in the Black Rock Tavern.

Based on these declarations, a temporary restraining order was granted in favor of all the plaintiffs. (See § 527.6, subd. (c).) The terms of that order are not challenged here and we have no occasion to consider them. Acting as his own counsel, defendant then filed a response to the petition, alleging that the plaintiffs were not persons in whose favor an injunction could be granted pursuant to Code of Civil Procedure section 527.6. He further claimed that he did not provoke any altercation and that his conduct was not directed against plaintiffs. His response also challenged the petition on the grounds that it did not state a cause of action against him.

■■ ■■■■ An evidentiary hearing was held but no reporter's transcript, agreed statement or settled statement of that hearing has been furnished by either party.[2] The minutes of court reflect that five witnesses testified in favor of plaintiffs. Defendant was the only witness on his own behalf. After the hearing, the court announced its decision to issue an injunction as prayed for in favor of all plaintiffs and instructed counsel for plaintiffs to prepare the order. Defendant then filed an objection to the proposed order. After a hearing on the objections, the court narrowed the scope of its earlier ruling by limiting it to Diamond View and Doering and then signed its formal order. Under this final order, defendant was prohibited

---

[2]We have been advised by the parties that the hearing on the injunction was not reported. However, the proceedings on the objections to the proposed judgment were reported and we have been furnished with a transcript of that hearing.

Since no record of the oral proceedings at the injunction hearing has been furnished, we must presume that the evidence adduced there is sufficient to support the judgment. "It is elementary and fundamental that on a clerk's transcript appeal the appellate court must conclusively presume that the evidence is ample to sustain the findings, and that the only questions presented are as to the sufficiency of the pleading and whether the findings support the judgment." (*Kompf* v. *Morrison* (1946) 73 Cal.App.2d 284, 286 [166 P.2d 350]; accord, *Ehrler* v. *Ehrler* (1981) 126 Cal.App.3d 147, 154 [178 Cal.Rptr. 642]. See generally, 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 273, pp. 283-284.)

from alarming, annoying or harassing Diamond View and Doering. He was ordered to remain outside the premises of the Black Rock Tavern and the Western Room, and prohibited from loitering around the entrance to either. He was also ordered to remain at least 10 yards from Doering and to refrain from contacting her by telephone. Finally, defendant was ordered to pay attorney's fees and costs in the aggregate sum of $2,758. This appeal followed.

## DISCUSSION

### I

In 1978 the Legislature enacted Code of Civil Procedure section 527.6, a special statute designed to afford protection against harassment.[3] (Stats. 1978, ch. 1307, § 2, p. 4294.) This statute authorizes a "person who has suffered harassment" to obtain a temporary restraining order and injunction against the harassing conduct and provides an expedited procedure to obtain such an injunction. (See generally, 6 Witkin, Cal. Procedure (3d ed. 1985) §§ 269-271, pp. 231-234.) ▆▆ Defendant contends that Diamond View is not a person in whose favor an injunction can be granted under the statute. Diamond View argues that the term "person" is not limited to natural persons and includes partnerships and corporations. Given the context in which the term is used and the legislative history of the statute, we find Diamond View's argument unconvincing.

The notoriously ambiguous term "person" has long plagued the law. The usual question is whether it includes artificial entities such as corporations, partnerships and associations. (See e.g., *Chronicle Pub. Co.* v. *Superior Court* (1960) 54 Cal.2d 548 [7 Cal.Rptr. 109]; *Painless Parker* v. *Board of Dental Exam.* (1932) 216 Cal. 285 [14 P.2d 67]; *People* v. *City of Oakland* (1891) 92 Cal. 611 [28 P. 807]; *Prudential Ins. Co.* v. *Small Claims Court* (1946) 76 Cal.App.2d 379 [173 P.2d 38]; *Oil Workers Intl. Union* v. *Superior Court* (1951) 103 Cal.App.2d 512 [230 P.2d 71].) Because of this uncertainty, the term is frequently defined, in varying ways, in the preliminary provisions of the different codes. (See e.g., Food & Agr. Code, § 38; Cal. U. Com. Code, § 1201, subd. (30); Civ. Code, § 14; Corp. Code, § 18; Evid. Code, § 175; Fin. Code, § 18; Fish & G. Code, § 67; Gov. Code, § 17; Harb. & Nav. Code, § 19; Health & Saf. Code, § 19; Ins. Code, § 19; Lab. Code, § 18; Pen. Code, § 7; Pub. Resources Code, § 2004; Pub. Util. Code, § 205; Rev. & Tax. Code, § 19; Sts. & Hy. Code, § 19; Veh. Code, § 470; Wat. Code, § 19.) Not infrequently, these codes contain the proviso

---

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated. The full text of section 527.6 is set forth in Appendix A.

that these preliminary definitions govern their construction unless the context otherwise requires. (See e.g., Food & Agr. Code, § 25; Bus. & Prof. Code, § 8; Cal. U. Com. Code, § 1201; Corp. Code, § 5; Evid. Code, § 100; Fin. Code, § 4; Fish & G. Code, § 2; Gov. Code, § 5; Harb. & Nav. Code, § 5; Health & Saf. Code, § 5; Ins. Code, § 5; Lab. Code, § 5; Pub. Resources Code, § 2001; Pub. Util. Code, § 203; Rev. & Tax. Code, § 5; Sts. & Hy. Code, § 5; Veh. Code, § 100; Wat. Code, § 5.)

As might be expected, the Code of Civil Procedure similarly contains such a preliminary definition of the term "person." As defined there the "word 'person' includes a corporation as well as a natural person." (§ 17.) This definition appears in the first paragraph of the section. In the second paragraph one discovers the standard proviso declaring that the words following in that paragraph have the meaning attributed to them "unless otherwise apparent from the context."[4] In our view, all of the definitions in section 17 are subject to that contextual limitation. ▮▮▮ In construing a statute we are enjoined by that same code to ascertain the Legislature's intent. "In the construction of a statute the intention of the legislature . . . is to be pursued, if possible; . . ." (§ 1859.)[5] Consistent with this injunction, the Supreme Court has repeatedly held that the "'fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purposes of the law.' In determining such intent, the court must first look to the words of the statute." (*T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 277 [204 Cal.Rptr. 143, 682 P.2d 338], citations omitted.) The words of a statute must be read in context, bearing in mind the nature and obvious purpose of the statute. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr.

---

[4]As originally enacted in 1872, this definitional statute ordained that all its definitions were to be employed in the sense affixed to them "except where a different sense plainly appears." (Cal. Code Civ. Proc. of 1872, § 17.) The amendment of 1873-1874 rewrote the section into its present basic form, adding the second paragraph. (Code Amend. 1873-1874, ch. 383, § 3, p. 280.) That second paragraph now declares that "[t]he following words . . . have in this Code the signification attached to them in this section, unless otherwise apparent from the context." (§ 17.) We do not discern from this restructuring of the section any legislative intent to delete the virtually universal imperative that general definitions of terms in the preliminary provisions of a code are necessarily qualified by the contextual usage of the word in other sections.

[5]But we caution that "[d]espite the anthropomorphic overtones of the word 'intention,' the Legislature is not a person. What goes on in the minds of the individual legislators when enacting a statute cannot fix its meaning. Rather, the Legislature is a collective entity and its 'intentions' are primarily known by its legislative acts. . . . In cases of statutory ambiguity a variety of means may be employed by which to resolve the semantic problem. But it is only as evidence of corporate knowledge and purpose which bears upon specific language that an extrinsic aid is relevant to proof of corporate intention." (*In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 739 [199 Cal.Rptr. 697]; fns. omitted.)

144, 514 P.2d 1224].) ▮▮ Implicit in this overriding requirement that the words of a statute are to be read in context is that the preliminary definition contained in section 17 is superseded when it obviously conflicts with the Legislature's subsequent use of the term in a different statute.[6]

▮ We turn then to the language of section 527.6 to determine whether the term "person" was used in the sense of a "natural person" or whether it was also meant to include "artificial persons" such as partnerships, corporations and associations. First of all, section 1 of the chapter enacting section 527.6 expressly declares that "[t]he Legislature intends by this act to protect the *individual's* right to pursue safety, happiness and privacy as guaranteed by the California Constitution." (Stats. 1978, ch. 1307, § 1, p. 4294, italics added.) This declaration explicitly states that it was the rights of individuals, and not artificial entities, that were sought to be protected by this legislation. That purpose is also reflected in the language of the statute itself. The statute requires that the harassment be directed against "a specific person." (§ 527.6, subd. (b).) This language also strongly suggests that the Legislature intended that the victim of the harassment be an individual human being rather than an artificial legal entity. Furthermore, "harassment" is defined in terms of its effect on the victim; that effect is described as one "which seriously alarms, annoys, or harasses" the tormented person. (§ 527.6, subd. (b).) In addition, the harassing course of conduct "must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the plaintiff." (*Ibid.*) These are emotional states exhibited by natural persons, not by legal fictions. Consequently, in the context of its usage in this statute, it appears that the term "person" was meant to refer only to natural persons, and not to legal entities.[7]

---

[6]It is true that section 17 does not define a person to include a limited partnership. Nevertheless, when the context of the statute under examination is consistent with an expansive interpretation, section 17 has been read broadly to include entities other than corporations. Thus in *Oil Workers Intl. Union* v. *Superior Court, supra,* 103 Cal.App.2d 512, the word "person" in the statutes governing contempts was interpreted to include unincorporated associations. "The statement that the word person 'includes' a natural person and a corporation leaves open for consideration what other types of entities that word includes when used in a particular context to meet a given situation. The word 'includes' is not ordinarily a word of limitation but rather of enlargement. The Legislature used it as a word of enlargement in section 17." (*Id.,* at p. 570; citations omitted.) But like all general definitions, this definition of person governs the construction of the code unless, as is the case here, the context otherwise requires. The critical point is the term's usage in the statute at issue, not its definition in section 17.

[7]Another illustration of this contextual restriction is found in the Domestic Violence Prevention Act. (§ 540 et seq.) This act authorizes temporary restraining orders and injunctive relief against domestic violence. Although the term "person" is used throughout the act, is it clear from the context that it only applies to natural persons. Thus, for example, a family or household member is defined, among other things, as a "person who regularly resides in the household." (§ 542, subd. (c).) Since artificial entities do not reside in households,

Our conclusion that the purpose of section 527.6 is to provide a remedy only to natural persons also finds support in the legislative history of the statute. In *Smith* v. *Silvey* (1983) 149 Cal.App.3d 400 [197 Cal.Rptr. 15], the court recounted a portion of that history: "An analysis prepared for the Senate Committee on Judiciary (1977-1978 Reg. Sess.—Assem.Bill No. 3093) saw the purpose as follows: 'Under existing law, a victim of harassment may bring a tort action based either on invasion of privacy or on intentional infliction of emotional distress. Where great or irreparable injury is threatened, such victim may obtain an injunction under procedures detailed in C.C.P. Sec. 527(a). [¶] This bill would establish an expedited procedure for enjoining acts of 'harassment,' as defined, including the use of temporary restraining orders. The bill would make it a misdemeanor to violate the injunction and would provide for the transmittal of information on the TRO or injunction to law enforcement agencies. [¶] The purpose of the bill is to provide quick relief to harrassed persons.'" (*Id.*, at p. 405.)

The legislative history further reveals that the source of the bill was a "coalition of McGeorge Law Students" and that the "impetus for this bill was an intimidating experience recently suffered by a Sacramento law student. Newsweek in the July 4, 1977 issue, described it in the following passage: [¶] 'He followed her day after day, she remembers. He pressed his face against the windows of her class rooms and peered at her around bookstacks in the library. He swathed her car in red and white camellia blossoms. He called her 40 times a weekend and sent her gifts such as his sterling-silver baby cup . . . When she fled to her parents' home 150 miles away, he would park nearby for hours . . . [He] bombarded her, she says, with clippings on parapsychology, letters he had written to President Ford and gifts, including a rock shaped like a phallus.'" (Assem. Com. on Judiciary, Digest of Assem. Bill No. 3093 (1977-1978 Reg. Sess.) as amended April 24, 1978.)

Given this legislative history and the context in which the word "person" is used in the statute, we conclude that a limited partnership is not a person in whose favor an injunction can be granted pursuant to Code of Civil Procedure section 527.6. The trial court consequently erred in issuing an injunction in favor of Diamond View.[8]

---

the term person obviously does not include a corporation or partnership. Similarly, a domestic violence injunction can be obtained under described circumstances against a "person who is the parent of a minor child . . . ." (§ 542, subd. (d).) Since an artificial entity cannot be a parent, it is self evident that the term "person" was not used in the definitional sense set out in section 17.

[8]Diamond View argues alternatively that even if it is not entitled to injunctive relief under section 527.6, it could have obtained an injunction in these circumstances under other provisions of the codes. That may well be true but it does not change the result here. Section 527.6 is a special statute which significantly changed the ordinary procedures and require-

II-III*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

That portion of the judgment (order) prohibiting defendant from harassing plaintiff Diamond View Ltd. and awarding attorney's fees and costs to Bill Kerns as partner of Diamond View Ltd. is reversed. The matter is remanded to the trial court with directions to conduct further proceedings on the issue of the award of attorney's fees to plaintiff Kit Doering. In all other respects, the judgment (order) is affirmed. Each party shall bear its own costs on appeal.

Blease, Acting P. J., and Sims, J., concurred.

A petition for a rehearing was denied May 27, 1986.

APPENDIX A

Section 527.6 of the Code of Civil Procedure provides as follows: "527.6. (a) A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order, and an injunction prohibiting harassment as provided in this section. [¶] (b) For the purposes of this section, 'harassment' is a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress, to the plaintiff. 'Course of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.' [¶] (c) Upon filing a petition for an injunction under this section, the plaintiff may obtain a temporary restraining order in accordance with subdivision (a) of Section 527. A temporary restraining order may be granted with or without notice upon an affidavit which, to the satisfaction of the court, shows reasonable proof of harassment of the plaintiff by the defendant, and that great or irreparable harm would result to the plaintiff. A temporary

---

ments in actions for injunctive relief by altering the provisions relating to pleading, temporary restraining orders, undertakings, attorney's fees, discovery and trial. These differences are substantive and prevent the affirmance of the injunction in this case on the theory that Diamond View may have been hypothetically entitled to similar relief under different statutes.

*See footnote, *ante*, page 612.

restraining order granted under this section shall remain in effect, at the court's discretion, for a period not to exceed 15 days, unless otherwise modified or terminated by the court. [¶] (d) Within 15 days of the filing of a petition, a hearing shall be held on the petition for the injunction. The defendant may file a response which explains, excuses, justifies, or denies the alleged harassment or may file a cross-complaint under this section. At the hearing, the judge shall receive such testimony as is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an injunction shall issue prohibiting the harassment. An injunction issued pursuant to this section shall have a duration of not more than three years. At any time within the three months before the expiration of the injunction, the plaintiff may apply for a renewal of the injunction by filing a new petition for an injunction under this section. [¶] (e) Nothing in this section shall preclude either party from representation by private counsel or from appearing on his or her own behalf. [¶] (f) Upon filing of a petition for an injunction under this section, the defendant shall be personally served with a copy of the petition, temporary restraining order, if any, and notice of hearing of the petition. [¶] (g) The court shall order the plaintiff or the attorney for the plaintiff to deliver, or the clerk to mail, a copy of each temporary restraining order or injunction, or modification or termination thereof, granted under this section, by the close of the business day on which the order was granted, to the law enforcement agencies within the court's discretion as are requested by the plaintiff. Each appropriate law enforcement agency shall make available information as to the existence and current status of these orders to law enforcement officers responding to the scene of reported harassment. [¶] (h) The prevailing party in any action brought under this section may be awarded court costs and attorney's fees, if any. [¶] (i) Any willful disobedience of any temporary restraining order or injunction granted under this section is punishable pursuant to Section 273.6 of the Penal Code. [¶] (j) This section does not apply to any action covered by Section 4359 or 7020 of the Civil Code, or by Chapter 4 (commencing with Section 540) of this title, or by Title 1.6C (commencing with Section 1788) of the Civil Code. Nothing in this section shall preclude a plaintiff's right to utilize other existing civil remedies. [¶] (k) The Judicial Council shall promulgate forms and instructions therefor, rules for service of process, scheduling of hearings, and any other matters required by this section. The petition and response forms shall be simple and concise.''