Filed 12/30/15  Lo v. Chan CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| SHANG JEN LO, | B261883 |
| Plaintiff and Respondent, | (Super. Ct. No. VS023929) Los Angeles County |
| v. | |
| SHU PING CHAN, | |
| Defendant and Appellant. | |
| SHANG JEN LO, | B261885 |
| Plaintiff and Respondent, | (Super. Ct. No. VS023928) Los Angeles County |
| v. | |
| JACK CHEN, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Thomas I. McKnew, Jr., Judge.  Affirmed in part and reversed in part.

Shu Ping Chan, in pro. per., for Defendant and Appellant.

Jack Chen, in pro. per., for Defendant and Appellant.

David L. Prince and Miles L. Prince for Plaintiff and Respondent.

_____

In these consolidated appeals, Shu Ping Chan and her son Jack Chen challenge the renewed restraining orders in favor of respondent pastor Shang Jen Lo. Appellants argue the renewed orders are unsupported by substantial evidence, are contrary to our previous decision in this case (*Lo v. Chen* (Dec. 4, 2013, B245627) [nonpub. opn.] ), and violate appellants' First Amendment rights. Our previous decision does not prevent the trial court from renewing the restraining orders based on new evidence, and appellants cannot challenge the sufficiency of that evidence on an incomplete record on appeal. Nonetheless, on the face of the record, we find the new provisions included in the restraining orders—prohibiting appellants from displaying signs facing the Cerritos College parking lot and approaching or calling out to parishioners about respondent or other church leaders on days when church services are held—to be unconstitutional. We reverse those provisions and affirm the rest of the orders.

## FACTUAL AND PROCEDURAL SUMMARY

We borrow the facts relevant to the original restraining orders from our opinion in *Lo v. Chen*, *supra*, B245627. "Respondent is pastor of the First Evangelical Community Church [in Cerritos]. In October 2005, respondent agreed to lend Ms. Chan $100,000 at an annual interest rate of 11 percent. In December 2009, Ms. Chan sued respondent, claiming that he had disbursed only $76,000. Ms. Chan also alleged that respondent breached an oral contract with her on another matter. In November 2011, a trial court ruled in favor of Ms. Chan and modified the note to reflect the $76,000 disbursement. In April 2012, a jury before a different court found respondent not liable on the oral contract claim. After the court denied her posttrial motion for attorney fees, Ms. Chan appealed. Division Five of this district affirmed. (*Chan v. Lo* (July 9, 2013, B239783) [nonpub. opn.].)

"Soon after the jury verdict, the conduct of appellants at the church became an issue. Mr. Chen says he was concerned about respondent's lack of integrity in making usurious loans. Respondent claims appellants were bothered by the loss in the jury trial. In any case, the parties dispute the facts underlying an altercation at the church on

2

May 13, 2012. Respondent argues appellants approached him immediately following a morning church service. They tried to speak with him and nearby parishioners about the jury trial. Respondent claims that this disrupted church services. Another pastor asked appellants to leave. Appellants claim respondent slapped Ms. Chan's hand when she attempted to shake his hand. Then they talked about their court disputes for two hours, during which Ms. Chan argued 'it is neither biblical nor . . . moral to make high interest rate loans.'

"On June 2, 2012, Mr. Chen sent an email in Chinese to church leaders that described the conversation on May 13. According to respondent, the email also alleged that respondent was involved in a Ponzi scheme. Appellants refer to a certified English translation of the message to show that the email made no such allegation, but no translation appears in the record. Soon flyers were found on cars in the church parking lot. According to Mr. Lo, their content was 'very similar in nature to the email of June 2, 2012.'

"On September 30, 2012, appellants appeared at a training meeting conducted by respondent for 30 to 40 parishioners at the church. Appellants claim they attended the session, listened for some time, and then confronted respondent about the high interest rate loans when he began to talk about repentance. When Ms. Chan spoke about respondent's alleged dishonesty, he ended the meeting. Respondent and other church officials then asked appellants to leave, and called the Los Angeles County Sheriff.

"On November 4, 2012, appellants stood outside the church holding signs stating, essentially, that respondent was dishonest. Again, someone called the sheriff. The responding officer declined to remove appellants from the sidewalk. Two days later, respondent received an email from church leaders expressing concern about the picketing. They worried about the safety of children, and about how some parishioners had decided to no longer attend services due to the protest. Respondent feared he would lose his job. As a result, he petitioned the court for a temporary restraining order against appellants. Respondent claimed appellants were involved in five incidences: the confrontations on May 13 and September 30, the email on June 2, the flyers on June 20,

3

and the sidewalk demonstration on November 4. He contended that appellants were disrupting church services and threatening his employment. After the court denied the petition because there were 'no acts . . . or threat[s] of violence,' respondent filed a second petition seeking to restrain appellants. The court granted that request. In relevant part, the orders prohibit appellants from contacting any members or leaders of the church, and require them to stay 100 yards away from respondent, his home, workplace, car, and the church." (*Lo v. Chen*, *supra*, B245627, at pp. 2–4.)

In our previous decision, we rejected appellants' contention that their conduct did not amount to harassment (*Lo v. Chen*, *supra*, B245627, at p. 4), and we explained that hearsay evidence is admissible under the civil harassment statute. (*Id*. at p. 6, citing Code Civ. Pro, § 527.6, subd. (i)[1]; *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 729.) But we agreed with appellants that the provisions prohibiting them from being present within 100 yards of the church and contacting any church members or leaders for any reason burdened more speech than necessary. (*Lo v. Chen*, at p. 8.) On March 18, 2014, the trial court amended the restraining orders by deleting the provisions prohibiting appellants from contacting church members or leaders and being within 100 yards of the church.

Respondent moved to modify the restraining orders to prohibit appellants from talking about him to parishioners in his presence and from videotaping parishioners' children on church property. In turn, appellants asked the trial court exparte to delete the provision requiring that they stay 100 yards from respondent's workplace because it effectively prevented them from standing on the sidewalk in front of the church. The court modified the orders, allowing appellants to be on the sidewalk provided they do not "harass, molest or annoy" respondent. After a hearing on May 13, 2014, the orders were further modified to allow appellants to be on the sidewalk adjacent to the church, so long as they do not "[a]nnoy, harangue or harass" respondent and church members "by the

---

[1] Subsequent statutory references are to the Code of Civil Procedure, unless otherwise indicated.

display of any sign, public address system, or other loud, abusive methods." Appellants also were prohibited from "[a]nnoy[ing], harangu[ing] or harass[ing]" respondents or church members "as they come and go" from the church "wherever located."

In December 2014, respondent requested a renewal of the restraining orders, claiming appellants intensified their efforts to harass respondent by regularly appearing "outside the church" and harassing "parishioners as they attempt to enter or leave the church." The request was supported by the declarations of two parishioners. Appellants opposed the request for lack of evidence of harassment directed at respondent. They argued that the civil harassment statute (§527.6) does not provide injunctive relief to third parties and that the existing restraining order violated their right to free speech by prohibiting the display of any signs on the sidewalk adjacent to the church. In reply, respondent submitted his declaration and photographic exhibits.

The court held a hearing on February 5, 2015, at which appellants and respondent testified. No reporter was present at the hearing, and no settled statement of the testimony appears in the record on appeal. The court overruled appellants' objections to respondent's evidence submitted in reply and admitted his photographic exhibits, as well as appellants' exhibits. The court renewed the orders as amended on March 18, 2014, with two additional provisions. One prohibited appellants from "approach[ing], yell[ing] out or call[ing] out to parishioners from the Cerritos College parking lot concerning [respondent] or other church officials on any day church services will be on going." The other prohibited appellants from "post[ing] any signs, banners or pictures facing the Cerritos College parking lot on any day church services will be on going."[2]

These appeals followed. We consolidated them for purposes of oral argument and decision.

---

[2] The additional provisions were directed at appellants' picketing activities on the sidewalks of the neighboring Cerritos College parking lot.

## DISCUSSION

### I

Appellants argue respondent's evidence was insufficient to establish appellants engaged in a violent or harassing course of conduct against respondent, and respondent improperly obtained an injunction on behalf of the church in the guise of a personal restraining order. They also argue the trial court prejudiced them by admitting new evidence through respondent's reply brief.

Section 527.6, subdivision (a) authorizes a person to petition for an injunction prohibiting harassment, which subdivision (b)(3) defines as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." The opposing party may file a response to the petition, and the court must hold a hearing, at which it must "receive any testimony that is relevant, and may make an independent inquiry." (§ 527.6, subds. (h)-(j); see also *Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 730 [court must allow live testimony in harassment proceedings but may impose reasonable limitations necessary to conserve expeditious nature of procedure under § 527.6].)

It is a general rule of motion practice that the court has discretion to consider new evidence introduced on reply where the opposing party has the opportunity to respond to the new evidence. (See, e.g., *Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1308 [trial court did not abuse its discretion by considering supplemental declaration by plaintiff on reply where "the trial court allowed defendant the opportunity to testify at the hearing on the preliminary injunction, and he did"].) Appellants may not complain that the court prejudicially abused its discretion in admitting respondent's photographic evidence submitted on reply. Section 527.6, subdivision (i) envisions that the court would base its determination on live testimony at a hearing after any papers are

6

filed.  The court's minute order indicates appellants testified at the February 5, 2015 hearing, and, presumably, had an opportunity to address respondent's evidence.

The oral proceedings at the hearing were not reported, nor have appellants provided us with an agreed or settled statement.  (See Cal.Rules of Court, rule 8.120(b) ["If an appellant intends to raise any issue that requires consideration of the oral proceedings in superior court, the record on appeal must include a record of these oral proceedings in the form of one of the following:  [¶] (1) A reporter's transcript under rule 8.130; [¶] An agreed statement under rule 8.134; or [¶] A settled statement under rule 8.137."] )  Although appellants cite declarations included in the record, there is no indication that the court admitted the declarations into evidence or based its ruling on them rather than on the live testimony at the hearing.  An appeal without a record of oral proceedings is considered to be based on the judgment roll, and appellants may not broaden the scope of appellate review by including documentary evidence in the record.  (*Lakeside Park Assn. v. Sweeney* (1958) 157 Cal.App.2d 101, 103; see § 670, subd. (a) [identifying papers constituting judgment roll].)

In a judgment roll appeal, "[t]he sufficiency of the evidence is not open to review.  The trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court, unless reversible error appears [on the face] of the record." (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924.)  Because we have no record of the oral proceedings at the renewal hearing, we must presume that sufficient evidence was presented at the hearing that appellants harassed respondent.  (See *Diamond View Limited v. Herz* (1986) 180 Cal.App.3d 612, 615, fn. 2.)[3]

Appellants argue the restraining orders create a broad injunction in favor of the church rather than a personal restraining order in favor of respondent, in violation of

---

[3] Respondent relies on the reporter's transcript of a subsequent contempt proceeding against appellants.  That transcript is irrelevant to the issues before us, and we decline to consider it.  The trial court has since vacated its orders for civil contempt sanctions against appellants, in compliance with the alternative writs issued in case Nos. B264401 and B264404.

7

*Diamond View Limited v. Herz*, *supra*, 180 Cal.App.3d 612.  In that case, the court reversed an injunction in favor of a limited partnership, holding that such an entity was not a "person" for purposes of section 527.6.  (*Id.* at p. 619.)  Since the only named protected person under the restraining orders in this case is respondent, a natural person, no reversible error appears on the face of the record.  Because of the limited record on appeal, we are bound to presume that the evidence sufficiently showed appellants' harassment of parishioners indirectly harassed respondent.  (See *Diamond View Limited v. Herz*, *supra*, 180 Cal.App.3d at p. 615, fn. 2.)

## II

Appellants argue that our previous decision conclusively held picketing is a constitutionally protected activity, and therefore appellants' "peaceful picketing" on public sidewalks cannot be harassment as a matter of law.  They urge that collateral estoppel prevents respondent from relitigating the issue.

"[W]here an appellate court states in its opinion a principle of law necessary to the decision, that principle becomes law of the case and must be adhered to in all subsequent proceedings, including appeals.  [Citations.]"  (*Citizens for Open Access Etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1064.)  In our previous decision, we concluded that the orders to stay 100 yards away from the church and not to speak to other church members burdened more speech than necessary to protect respondent from harassment.  While we acknowledged that picketing is constitutionally protected speech, we did not hold that it may never be restricted.  To the contrary, we explained that less restrictive means were available to protect respondent from harassment, citing *Madsen v. Women's Health Center, Inc.* (1994) 512 U.S. 753, 775–776 (*Madsen*), which identified reasonable limits on the time and duration of picketing and the number of pickets that could have achieved the same desired results.  We concluded that "[r]estricting appellants' presence at the church during certain hours, and limiting contact with church members only with regards to harassing conduct, would have achieved the same result here."  (*Lo v. Chen*, *supra*, B245627, at p. 8.)

8

We also commented that, unlike the protesters in *Madsen*, *supra*, 512 U.S. 753, 758–769, appellants had not blocked church entrances or violated previous orders. (*Lo v. Chen*, *supra*, B245627, at p. 8, fn. 3.) Our comment did not preclude the presentation of new evidence on those or other factual matters in support of the request for renewal of the restraining orders. That is so because the law of the case doctrine applies only to questions of law, not questions of fact, and "'may not be extended to be an estoppel when new material facts, or evidence, or explanation of previous evidence appears in the subsequent trial. [Citations.]' [Citation.]" (*People v. Barragan* (2004) 32 Cal.4th 236, 247.)

In short, our previous decision cannot be read to preclude the trial court from determining on new evidence whether appellants' picketing activities harassed respondent and restraining those activities as appropriate.

### III

Appellants argue that the restraining orders prohibit "peaceful picketing on public sidewalk" and are therefore "constitutionally overbroad, content based, prior restraint on free speech." Our review of appellants' factual contentions is limited by the inadequate record on appeal. (See, e.g., *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 146 [finding record inadequate to evaluate contention that prohibition on use of racial epithets outside of plaintiffs' hearing was overbroad].) We review de novo whether the restraining orders pass constitutional muster (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188), but only to the extent any error appears on the face of the record.

Appellants contend that the provision restraining them from coming within 100 yards of respondent's workplace is overbroad because it prevents them from picketing in front of the church. We see no reversible error on the face of the record. Content-neutral restrictions pass constitutional muster if they "burden no more speech than necessary to serve a significant government interest." (*Madsen*, *supra*, 512 U.S. at p. 765.) The stay-away orders in this case, which restrict appellants from coming within 100 yards of respondent's person, car, home and workplace, are indistinguishable from the orders upheld in *R.D. v. P.M.*, *supra*, 202 Cal.App.4th 181. The orders in that case restricted the

appellant from coming "within 100 yards of [the respondent] and members of her immediate family, their home, workplaces, vehicles, and schools." (*Id*. at p. 191.) Because the stay-away orders were content neutral, any infringement on appellants' speech was incidental. (*Id*. at p. 192.) In light of the inadequate record on appeal, we have no basis for determining that narrower content-neutral restrictions were available to prevent appellants' direct or indirect harassment of respondent. (See *id*. at p. 193.)

In contrast, the new provision prohibiting appellants from approaching, yelling out, or calling out to parishioners concerning respondent or other church officials from the Cerritos College parking lot on any day church services are held is, on its face, an impermissible content-based prior restraint of speech. "'A prior restraint is a *content-based* restriction on speech *prior to its occurrence*.' [Citation.]" (*DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 886.) It is "the least tolerable infringement on First Amendment rights," and therefore presumptively unconstitutional. (*Parris v. Superior Court* (2003) 109 Cal.App.4th 285, 296, quoting *Nebraska Press Assn. v. Stuart* (1976) 427 U.S. 539, 559; see also *Bantam Books, Inc. v. Sullivan* (1963) 372 U.S. 58, 70.)

Respondent's attempt to justify this prior restraint of appellants' speech about him and other church officials by analogy to *R.D. v. P.M.*, *supra*, 202 Cal.App.4th 181 is unavailing. As we explained, the restraining order at issue in that case was content neutral. (*Id*. at p. 191 [stay-away order "does not mention or prohibit [appellant] from making statements on any subject or of any content, as long as she does so at a distance"].)

To the extent respondent suggests appellants have been defaming him, we note that a civil harassment proceeding is not the proper vehicle for enjoining defamatory speech. Specific statements may be enjoined only after a trial and determination on the merits that they are indeed defamatory. (*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1155–1156; see also *Evans v. Evans* (2008) 162 Cal.App.4th 1157, 1169 [preliminary injunction prohibiting publication of any "false and defamatory" statements was constitutionally invalid because there had been no trial on whether any statement was

defamatory].)  The expedited summary proceeding under section 527.6 does not provide for a trial, nor is it "intended to supplant normal injunctive procedures applicable to cases concerning issues other than 'harassment' as statutorily defined."  (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 811; see also *Aguilar v. Avis Rent A Car System, Inc.*, *supra*, 21 Cal.4th at pp. 138, 142 [injunction against use of racial slurs was not prior restraint where it was issued after jury determination that harassing speech amounted to employment discrimination].)

Appellants also are prohibited from posting signs, banners or pictures facing the Cerritos College parking lot on any day church services are held.  While this restriction appears to be content neutral on its face, its propriety is questionable.  In *Madsen*, *supra*, 512 U.S. 753, the court struck a "blanket ban on all 'images observable'" from an abortion clinic, reasoning that "[t]he only plausible reason a patient would be bothered by 'images observable' inside the clinic would be if the patient found the expression contained in such images disagreeable."  (*Id*. at p. 773.)  To the extent the prohibition on signs facing a parking lot is a prohibition on signs visible from the parking lot, we cannot say that the restriction is not based on the content of the signs.  The provision is broader than necessary to prohibit proscribable speech, such as threats.  (*Ibid*.) [4]

We understand petitioner's exasperation at appellants' behavior.  Nothing in our opinion prevents him from petitioning the trial court for appropriate orders restraining any harassing conduct that is not already covered by the existing stay-away orders, so long as any additional orders are content neutral and do not burden more speech than necessary.  To the extent petitioner seeks to enjoin appellants' speech directly, he may

---

[4] At oral argument, respondent's counsel characterized the additional provisions targeting appellants' picketing activities next to the Cerritos College parking lot as an extension of the stay-away orders that we previously approved.  Nothing in our previous decision suggests that the court may extend a content-neutral stay-away order by way of a content-based prior restraint on speech.  Counsel also suggested that the new provisions prevented appellants solely from annoying, haranguing or harassing respondent or parishioners.  While such language appeared in the May 13, 2014 amended order, that order was not renewed, and its language is not the proper subject of this appeal.

not obtain a proper remedy in a civil harassment proceeding, unless the speech is proscribable under the First Amendment.

## DISPOSITION

The orders are reversed to the extent they prohibit appellants from approaching, yelling out, or calling out to parishioners concerning respondent or other church officials and from displaying any signs, banners or pictures facing the Cerritos College parking lot on any day church services are held.  In all other respects the orders are affirmed.  The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P.J.

We concur:


WILLHITE, J.


MANELLA, J.

12