Filed 9/9/22 Perez v. Sanchez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CARLOS ALEJANDRO PEREZ, Plaintiff and Appellant, v. MICHAEL JIMMY SANCHEZ, Defendant and Respondent. | H048330 (Santa Clara County Super. Ct. No. 19CH009049) |

Carlos Alejandro Perez appeals from a three-year civil harassment restraining order protecting Michael Jimmy Sanchez, who had a relationship with Perez's ex-girlfriend, Tracey Fuller. He challenges the trial court's orders quashing two subpoenas issued to Fuller and contends there was insufficient evidence of a "course of conduct" or other basis for issuing the civil harassment restraining order. We conclude that Perez failed to preserve his claims as to the subpoenas and that the civil harassment restraining order was supported by substantial evidence. Accordingly, we affirm the June 26, 2020, civil harassment restraining order.

## I.    BACKGROUND

Perez and Fuller dated from December 2018 to May 2019. Sanchez also started dating Fuller in December 2018. He considered himself to be cohabiting with her as of April 2019.

According to Fuller, she sent a message to Perez on June 1, 2019, stating that she no longer wished to have a relationship with him, but on that day and on several other occasions Perez showed up at her house unannounced and uninvited. According to Perez, he was the one who ended their relationship.

The morning of June 15, 2019, however, Perez went to Fuller's house in unincorporated Los Gatos. Fuller was out for a bike ride, but Sanchez was at home. Sanchez did not answer Perez's knock but saw Perez drive away in a "unique car" that matched what Fuller had previously described for him. When Sanchez was unable to reach Fuller to warn her Perez was in the area, Sanchez drove around the neighborhood in hopes of warning her in person. While doing so, Sanchez spotted Perez. Because 20 to 30 minutes had passed since Perez had knocked at Fuller's door, Perez's continued presence in the neighborhood heightened Sanchez's concerns. Sanchez therefore followed Perez and, at a stop sign, left his car to take a photo of Perez's license plate. "[Perez] asked who I was. I told him who I was. I told him I was dating Tracey. She told me about him coming around." Perez "did not look too happy" at Sanchez's report that he was dating Fuller. Sanchez told Perez to stop coming to Fuller's home. Perez objected that it was he who was Fuller's boyfriend and got out of his car with his phone, saying he was calling Fuller.[1]

According to Sanchez, Perez then "rushed" him, punched him in the nose, and the two fought until Sanchez subdued Perez on the ground and a bystander called police. Perez, on the other hand, testified that he was about to call 911 when Sanchez, reaching into Perez's car, grabbed Perez's phone and tossed it toward the highway. Perez testified that Sanchez also took a second phone away from Perez. According to Perez, "that's when I got out of my vehicle and the altercation . . . happened in my attempt to grab one of the phones to call 911."

---

[1] Fuller, in her declaration, averred that she received a phone call from Perez during her ride that morning but that she did not answer the call.

Promptly thereafter, Perez contacted Fuller for the express purpose of obtaining information about her relationship with Sanchez. Perez found Fuller to be insufficiently cooperative in his efforts to know more. Consequently, on June 17, 2019, Fuller texted Perez: "You have come by my home without permission four times and it makes me unsafe and uncomfortable. I do not . . . want you to contact me again, come to my home, or any location you think I might be at in an attempt to find/contact me. Furthermore, do not contact either of my family members, friends, or colleagues. I am blocking communication in telling you not to continue to show up at my home." Perez testified that Fuller's lack of cooperation with his asserted need to investigate her relationship with Sanchez "threw [Perez] off." Perez further disputed the assertion that he had been to Fuller's home four times without permission, on the ground that each occasion was "peaceful and documented."

On June 25, 2019, Sanchez learned of a 15-minute video Perez posted on YouTube in which Perez talked about the June 15 fight with Sanchez, expressed his desire to continue dating Fuller, and "described all of her friends list and whatnot."

On June 26, 2019, Perez returned to Fuller's house. Perez testified that the reason he went to the house was "to find out why Mr. Sanchez attacked me" and, while there, to retrieve belongings and money he claimed Fuller owed him. Sanchez and Fuller had just arrived at home when they heard rapid knocking on the door. Sanchez opened the door to find Perez, clad "in tights from head to toe" with a GoPro camera on his head. Fuller shut the door. Two days later, Fuller petitioned the family court for a domestic violence restraining order; a temporary restraining order issued that same day.

Because issuance of the domestic violence restraining order upset Perez, he initially sued Fuller for slander but ultimately dismissed that action with prejudice; he then hired a private investigator to obtain information on Sanchez, instead, so that Perez could pursue a small claims action against him, which Perez filed in October. Perez

3

obtained a default judgment against Sanchez, which Sanchez then successfully moved to set aside.

On November 7, 2019, according to Sanchez, he saw Perez driving on the freeway toward Gilroy and then saw Perez drive by the parking lot of Sanchez's Gilroy workplace. Later that day, Sanchez and Fuller together saw Perez in his car at their Campbell workplace.[2] At the Campbell location, Perez encountered Sanchez and Fuller in the parking lot. Fuller called the Campbell police and Perez was arrested for violating the restraining order against Fuller. Perez testified at trial that he was only attempting to find Sanchez's place of employment in anticipation of effecting service of Perez's small claims action, but Perez did not offer this as an explanation to the officers who ultimately arrested him.[3] Rather, Perez told the police he "was driving to Nob Hill to pickup [sic] some groceries and then driving the car down the street." Perez did not have a process server with him in Campbell and made no attempt to have anyone else serve Sanchez at the scene. Moreover, Perez had already received information from the private investigator he had retained identifying Sanchez's workplace.

Five days later, Perez filed a request for a civil harassment restraining order against Sanchez.

On December 26, 2019, Sanchez and Fuller saw someone lurking in the bushes outside their home. On being detected, the person fled by jumping the fence. Sanchez and Fuller believed the person to be Perez. Perez denied any proximity to their home on that date: "After I was accused by Ms. Fuller of coming to her house unwanted, I began to track myself via GPS."

---

[2] Sanchez and Fuller both worked for the same employer, which operates in both Gilroy and Campbell. Sanchez works at both locations.

[3] At Perez's request, the trial court admitted the police report into evidence.

4

In February 2020, Sanchez filed his own request for a civil harassment restraining order against Perez.

Following a June 8, 2020 hearing, the trial court took the matter under submission and ultimately issued a three-year civil harassment restraining order against Perez. The court also issued a one-year civil harassment restraining order against Sanchez.

Perez timely appealed.

## II. DISCUSSION

Although Sanchez has filed no respondent's brief in this appeal, we decide the appeal on the record designated by Perez and Perez's opening brief, in accordance with California Rules of Court, rule 8.220(a)(2). It is a " 'cardinal principle of appellate review' " that "[a] ' " 'judgment or order of the lower court is *presumed correct*[, and a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " ' " (*In re Julian R.* (2009) 47 Cal.4th 487, 498–499 (*Julian R.*).) Perez asserts that the trial court erred in its treatment of his efforts to subpoena Fuller and its ultimate determination of the merits of Sanchez's cross-request for a restraining order, but his efforts to meet his burden on appeal founder against the presumption in favor of the judgment and our deferential review of the trial court's implied factual findings.

## A. *Motion to Quash Subpoena Duces Tecum*

Perez argues that the trial court abused its discretion in granting Fuller's motion to quash his pretrial subpoena duces tecum. "We review a ruling on a motion to quash, like other discovery orders, for abuse of discretion." (*Facebook, Inc. v. Superior Court of San Diego County* (2020) 10 Cal.5th 329, 359.) This is a deferential standard, which means "a reviewing court generally will not substitute its opinion for that of the trial court and will not set aside the trial court's decision unless 'there was "no legal justification" for the order granting or denying the discovery in question.' [Citation.]" (*Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154, 1161.) Generally, a party "may obtain discovery regarding

any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc., § 2017.010.)[4] Under normal circumstances, the right to discovery is construed liberally. (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 541.)

The trial court granted Fuller's motion to quash on the ground that "[t]he general rule is that discovery is not available in restraining order matters, and [Perez] has not established that the information sought would be relevant, admissible, or would lead to the discovery of admissible evidence." It is true that some courts have reasoned that, "[t]here is no provision under section 527.6 allowing for discovery, and in any case, under the civil harassment scheme there is insufficient time in which to conduct discovery." (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 650, fn. 11 (*Quintero*); see also *Diamond View Limited v. Herz* (1986) 180 Cal.App.3d 612, 619, fn. 8.) In fact, it "could arguably be an abuse of discretion if a trial court allowed discovery to go forward at a time, or in a manner, which interfered in any way with the prompt hearing on a petition under section 527.6." (*Quintero*, *supra*, 126 Cal.App.4th 635, 650.) We note, however, that by March 26, 2020, when the trial court in fact granted the motion to quash, the merits hearing had already been delayed for months beyond the 21 to 25 days contemplated by section 527.6, subdivision (g).[5]

Nonetheless, Perez has not affirmatively demonstrated error in the trial court's alternative basis for granting Fuller's motion to quash—that Perez had failed to

---

[4] Further undesignated statutory references are to the Code of Civil Procedure.

[5] As of the date of the order on the motion to quash, state and local COVID-19 emergency orders made it highly unlikely that the matter would proceed to a hearing as then scheduled for April 6, 2020.

6

"establish[] that the information sought would be relevant, admissible, or would lead to the discovery of admissible evidence." A trial court has wide discretion in granting or denying discovery. (*Pacific Tel. & Tel. Co. v. Superior Court* (1970) 2 Cal.3d 161, 171.) And it is the appellant who bears the burden of providing an adequate record. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.) " '[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 (*Gee*); *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 (*Foust*).) This is so because a judgment or order of the trial court is presumed correct and "error must be affirmatively shown." (*Gee*, *supra*, 99 Cal.App.4th at p. 1416; *Foust*, *supra*, 198 Cal.App.4th at p. 187.) By omitting from his notice of designation of the record not only Fuller's motion to quash the subpoena duces tecum but even the subpoena itself, Perez has failed to carry his burden of affirmatively demonstrating error.

The omission of the subpoena itself is particularly problematic here, where Perez's assertion in his opposition to the motion to quash that he seeks only a narrow range of communications between Fuller and himself is contradicted by Fuller's reply, characterizing the subpoena as seeking a range of communications between Fuller and Sanchez, not Perez. Given the limited record Perez has designated, we are unable to discern error in the trial court's conclusion that the universe of documents sought by subpoena was relevant, admissible, or reasonably likely to lead to the discovery of admissible evidence, and not intended to "cause[] unwarranted annoyance, embarrassment, or oppression" of Fuller for her relations with Sanchez. (See § 2023.010, subd. (c) [misuse of discovery].)

Perez relies on *Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719 (*Schraer*) for the dictum that "the trial court in a harassment proceeding may not arbitrarily limit the evidence presented to written testimony only, when relevant

7

oral testimony is offered." (*Id.* at p. 733, fn. 6.) But not only is this statement dictum (*Malatka v. Helm* (2010) 188 Cal.App.4th 1074, 1085, fn. 5), it has no bearing on the right to pretrial discovery, as opposed to the right to present oral testimony at the trial of the merits. *Schraer* does nothing to establish that the trial court's order quashing Perez's absent subpoena was undertaken "arbitrarily."

Because Perez has not met his burden of affirmatively demonstrating that the trial court abused its discretion in quashing the subpoena, we need not address whether the asserted error was prejudicial on this record.

**B.     *Subpoena for Appearance at the Hearing***

Following the trial court's granting of Fuller's motion to quash the subpoena duces tecum, Perez served Fuller with a subpoena for her appearance at the June 8, 2020, hearing. Fuller's attorney appeared at the hearing and told the court that Fuller was "available to show up in the event that she is required" with about 15 minutes' notice. He stated, however, that he was making a request that "either the court can consider a verbal motion to quash, or the court can rule that it's unnecessary for her to appear today." The trial court questioned Perez about the potential relevance of Fuller's testimony. When the trial court indicated to Perez that his own exhibit with text messages between Fuller and Perez "would provide probably the most persuasive evidence of the point you are trying to make"[6] and that he "may not need her to be here to make those points, if they turn out to be relevant," Perez responded, "That's correct." The judge ultimately stated to Fuller's counsel that "it doesn't seem like her being here to testify in person is anything to be necessary, but I want to see how things develop here. And then, as soon as I make a decisive ruling, I can contact you immediately if you want to leave a contact number for us." The record reflects no subsequent return to this issue: Perez never called Fuller as a

---

[6] Perez asserted that his communications with Fuller were relevant to impeach the veracity of any statement Sanchez might attribute to Fuller characterizing her relations with Perez.

8

witness, never sought a final ruling prior to the close of evidence, and never sought to supplement his earlier offer of proof to show that Fuller's anticipated testimony would be noncumulative.

" 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1, original italics.) Perez, accordingly, did not preserve any claim of error as to Fuller's appearance as a subpoenaed trial witness.

## C. *Request for Civil Harassment Restraining Order*

### 1. *Legal Standard*

Section 527.6 provides that a person who has suffered harassment may seek a temporary restraining order and an order after hearing prohibiting harassment. (§ 527.6, subd. (a)(1).) " 'Harassment' " is defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that served no legitimate purpose." (§ 527.6, subd. (b)(3).) Harassment consisting of a nonviolent course of conduct "must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).)[7] An order prohibiting harassment shall be issued if a judge "finds by clear and convincing evidence that unlawful harassment exists . . . ." (§ 527.6, subd. (i).)

---

[7] To the extent Perez invites us to apply the definition of "stalking" within the meaning of either Penal Code section 646.9 or Civil Code section 1708.7, we note that

9

"We review issuance of a protective order for abuse of discretion, and the factual findings necessary to support the protective order are reviewed for substantial evidence." (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226.) Under the doctrine of implied findings, we presume the trial court made all necessary factual findings supported by substantial evidence. (*Award Homes, Inc. v. County of San Benito* (2021) 72 Cal.App.5th 290, 297 (*Award Homes*).) "[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.) We view the record in the light most favorable to the judgment and accept the trial court's express or implied assessment of the credibility of witnesses. (*Id.* at p. 1008; see also *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762 (*Schild*).) It is only after thus construing the evidentiary record and implied findings in favor of the judgment and, here, Sanchez, that we may review de novo whether those facts "are legally sufficient to constitute civil harassment under section 527.6 . . . ." (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.)

### 2.    *Analysis*

Perez here focuses solely on whether the evidence is sufficient to establish a course of harassing conduct short of violence. We conclude, however, that the record evidence is sufficient to support alternative implied findings of harassment—(1) that Perez committed an unjustified (if not unprovoked) battery against Sanchez on June 15; and (2) that Perez engaged in a course of nonviolent but harassing conduct designed to

the definition of harassment under section 527.6—which contemplates no determination of criminal liability or civil liability in tort but merely a cessation of the harassing conduct—is distinguishable. Harassment under section 527.6 requires no intention by the perpetrator to seriously alarm, annoy, or harass the person targeted: by its plain terms, the statute requires only that these be the actual and objectively reasonable effects. (§ 527.6, subd. (b)(3).)

10

punish Sanchez for his involvement with Fuller and for his participation in the June 15 mutual combat.

Perez would have us limit our review to only the second of these. During closing argument, the court expressed its "initial thoughts" that there was no "proof to the required standard on either side" as to the June 15 altercation, inviting Sanchez's counsel to focus on the subsequent incidents, the dates of which the court indicated would be "critical." Perez argues that we should construe this statement—made 17 days before the court issued its orders on the submitted matter—as conclusive: in Perez's view, the court had reached a final determination that "unlawful violence" was unavailable as a basis for granting either party's request and therefore relied solely on Perez's post-June 15 actions as a "course of conduct" constituting harassment.

Perez's invitation to so restrict the potential legal basis for the trial court's ruling misconstrues the limits of appellate review. We review the trial court's ruling, not its rationale. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 80.) We construe all intendments and presumptions in favor of the judgment. (*Julian R.*, *supra*, 47 Cal.4th at p. 499.) We imply any factual findings necessary to the judgment, so long as supported by substantial evidence, as informed by the trial court's standard of proof. (*Award Homes*, *supra*, 72 Cal.App.5th at p. 297.) Given these constraints on our review, we may not treat the trial court's initial thoughts as limiting the trial court's eventual exercise of discretion once the matter was submitted.

Moreover, the trial court's decision to issue orders restraining both parties strongly suggests that it abandoned—as it was entitled to do[8]—its initial agnosticism as to whether either party committed an act of unlawful violence: the restraining order protecting Perez can only have been predicated on the June 15 incident. We therefore understand the trial

---

[8] Even a tentative ruling announced under California Rules of Court, rule 3.1590 is not binding on the trial court.

11

court to have rejected Sanchez's claim that Perez "charged at him" without provocation and credited Perez's testimony that Sanchez forcibly wrested Perez's phone from him while Perez was still in his car. But applying the doctrine of implied findings and drawing all inferences in favor of the judgment, as we must, this construction of the restraining order protecting Perez is not inconsistent with a further implied finding that Perez thereafter emerged from his car and attacked Sanchez in retaliation—whether for Sanchez's treatment of the phone or for his relations with Fuller—and not in self-defense. To the extent credited by the court, Sanchez's testimony disputing Perez's claim that, once out of his car on June 15, Perez only "smack[ed] or elbow[ed] [Sanchez] in the nose" in self-defense[9] was sufficient to support this further implied finding.

Even if we were able to artificially restrict the trial court to its pre-submission musings, Perez's arguments as to the sufficiency of evidence to support a finding of a harassing course of conduct are equally unavailing, because they uniformly require us to presume that the trial court credited his testimony over Sanchez's or that the trial court otherwise resolved factual inferences in his favor. Specifically, Perez contends that the record only reflects conduct directed at Fuller, not at Sanchez, and that the November 7 incident was in furtherance of protected petitioning activity, leaving only June 26 as an incident that could potentially support a course of conduct.

As a matter of law, we reject Perez's apparent suggestion that under section 527.6—unlike Civil Code section 1707.8 and Penal Code section 646.9—it is the perpetrator's subjective intent and not the actual and objectively reasonable effect of his purposeful conduct that is at issue. (See § 527.6, subd. (b)(1).) As a factual matter, to the

---

[9] It is clear the trial court credited much of Sanchez's testimony about the totality of Perez's conduct. Although the court could reasonably have found Perez's testimony to be troubling in various respects, it could not have found the requisite clear and convincing evidence of Perez's harassment of Sanchez based solely on Perez's testimony in opposition.

extent Perez asserts that Fuller was the only one to whom his conduct could have been directed, we must resolve all factual conflicts and questions of credibility in favor of Sanchez as the prevailing party. (*Schild*, *supra*, 232 Cal.App.3d at p. 762.) On this record, we cannot say it was unreasonable for the trial court to conclude, as we must presume, that Perez's harassment was multidirectional in its reach, encompassing both Fuller and Sanchez. To the extent the trial court credited Sanchez's testimony over Perez's, or relied on the description of Perez's YouTube video, it was further entitled to find that Perez resented Sanchez's claim to be Fuller's boyfriend and protector so soon after Perez claimed to have broken up with her, or that Perez—irrespective of his feelings for Fuller—resented Sanchez for having subdued him physically on June 15. Perez, by his own admission, pursued contact with Fuller by text and at her home for the express purpose of seeking information about Sanchez and later channeled his resentment over Fuller's domestic violence restraining order into a small claims action against Sanchez instead. The trial court could have discerned in this evidence a course of conduct by which Perez repeatedly sought to instigate and escalate conflict with both Fuller and Sanchez by openly provocative surveillance tactics. Thus, on this record, the trial court could reasonably have found it highly probable that Perez's conduct was directed at Sanchez—whether or not that conduct was also directed at Fuller or the severance of Fuller's relationship with Sanchez, and whether or not Sanchez understood that he was one of Perez's targets at the time of each successive act.

Perez's argument that the trial court was prohibited from considering his conduct on November 7 is equally unavailing. Perez is correct that constitutionally protected activity is excluded from the definition of course of conduct. (*Smith v. Silvey* (1983) 149 Cal.App.3d 400, 405.) He is also correct that an attempt to serve process can be considered protected petitioning activity. (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 966.) But the trial court was not obliged to credit Perez's post hoc justification for his presence at both of Sanchez's workplaces.

13

The record provides no support beyond Perez's own testimony for his contention that he was investigating Sanchez for purposes of service, and that testimony was impeached by Perez's prior inconsistent statements.[10] Therefore, the trial court could have found that Perez's asserted justification lacked credibility and that the evidence supported a different conclusion: that Perez was harassing Sanchez as payback for Fuller's restraining order. The court reasonably could have rejected Perez's explanation that he was simply attempting to confirm whether Sanchez was employed at the location. The trial court therefore was entitled to consider this incident as part of a course of conduct.

We find no fault in the trial court's implied determination that this course of conduct would "cause a reasonable person to suffer substantial emotional distress," as required under section 527.6, subdivision (b)(3), or that Sanchez in fact feared for his personal safety as well as for Fuller's.

### III.    DISPOSITION

The June 26, 2020 civil harassment restraining order after hearing issued against Perez is affirmed.

---

[10] Perez does not assert he actually intended to attempt service on Sanchez at that time; as a party to the action, Perez could not have effected proper service on Sanchez. (§ 414.10.)

14

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P.J.

_____

GROVER, J.

*Perez v. Sanchez*
H048330